```
1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
2                    CIVIL ACTION 16-CV-4966-KM

3     SUZANN MOORE, et al        : TRANSCRIPT OF PROCEEDINGS
                                 :
4              Plaintiffs,       :  ORDER TO SHOW CAUSE
                                 :
5              -vs-              :     Pages 1 - 34
                                 :
6     SAMSUNG ELECTRONICS AMERICA,:
      INC., et al               :
7              Defendants.       :
      - - - - - - - - - - - - - - -
8                                     Newark, New Jersey
                                      DATE: October 4, 2016
9
      B E F O R E:   HONORABLE KEVIN McNULTY
10                   UNITED STATES DISTRICT JUDGE

11    A P P E A R A N C E S:

12         CARELLA BYRNE
           BY:   JAMES E. CECCHI, ESQ.
13         JASON LOUIS LICHTMAN, ESQ.
           Attorney for the Plaintiff
14
           STAR AUSTEN & MILLER
15         BY:   SCOTT L. STARR, ESQ.
           LAURA HEIMAN, ESQ.
16         Pro Hac Vice Counsel for Plaintiffs

17
      _____
18    Pursuant to Section 753 Title 28 United States Code, the
      following transcript is certified to be an accurate record as
19    taken stenographically in the above entitled proceedings.

20
                        M/Mollie Ann Giordano
21                      MOLLIE ANN GIORDANO
                        Certified Court Reporter
22                      (973-220-9465)

23

24

25
```

1
        A P P E A R A N C E S - continued
2
    GIBBONS, P.C.
3   BY:   MICHAEL McDONALD, ESQ.
    Attorney for Defendant
4
    PHILIP M. OLISS, ESQ.
5   KRISTIN L. BRYAN, ESQ.
    Pro Hac Vice Counsel for Defendants
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Okay we are here on an application for

2     emergent injunctive relief in Moore versus Samsung, civil

3     action number 16-4966.  Before going any further, let's have

4     appearances of counsels.

5          MR. CECCHI:  Good afternoon, your Honor.  James Cecchi

6     Carella Byrne on behalf of the plaintiffs.  With me is Jason

7     Lichtman and Scott Starr from the firm of Starr Austen & Miller

8     from Indiana.

9          MR. McDONALD:  Michael McDonald from Gibbons PC on

10    behalf of Samsung.

11         MR. OLISS:  Phil Oliss his on behalf of Samsung

12    Electronics America.  With me is Kristin Bryan also.

13         THE COURT:  Okay.

14         Okay, we got some pro hacs hanging out there, before

15    we get started.

16         MR. CECCHI:  We do, your Honor.  Mr. Starr has a pro

17    hac pending.  Mr. Spragens from the Lieff Cabraser firm in

18    Nashville.

19         THE COURT:  And your side as well.  Anybody have any

20    objection either way?

21         MR. McDONALD:  No, your Honor.

22         THE COURT:  Those will be granted.  But don't all talk

23    at once.  Okay?

24         I have an application for all sorts of relief,

25    including what I'm calling practically a product recall on a

1    TRO basis.  Remarkable in my experience, but I'll hear you.

2    Talk to me about -- well, who will be speaking on the

3    plaintiffs' side.

4          MR. CECCHI:  With your permission, Mr. Lichtman will

5    take the laboring order on the presentation.  To the extent he

6    doesn't cover everything, I'll fill in on expedited discovery.

7          THE COURT:  Tell me a little bit why it's emergency

8    and why you're entitled to it.

9          MR. LICHTMAN:  Your Honor, may I approach?

10         THE COURT:  Yes.  I'm not fussy, is all I'm saying.

11         MR. LICHTMAN:  May it please the Court, you started

12   off on the obligation this is a remarkable application for

13   relief.  Respectfully, we would point out this is a very

14   remarkable case.  We stand before the Court two weeks ago.  We

15   sent counsel for Samsung, which is routine.  We asked them not

16   to destroy evidence moving forward in this case.  Samsung

17   responded to that e-mail, and we've attached that e-mail by

18   telling us to get a court order, and we are here seeking that

19   order.  And we would respectfully --

20         THE COURT:  That's fine.  When litigation is pending,

21   you know, certain duties arise.  We all know what they are.

22   And they're required to observe them, and are they required to

23   reassure you.

24         MR. LICHTMAN:  They are in this case, your Honor,

25   because we have information that Samsung in this case, on at

1    least one occasion where they personally destroyed it, or

2    permitted a washing machine to be destroyed.  Miss Moore's

3    washer was taken away, and we've submitted evidence that that

4    washer was shredded.

5              THE COURT:  Taken away by whom?  And shredded by whom?

6              MR. LICHTMAN:  She arranged for the washer to be taken

7    away.  And if you forgive me, your Honor, I'll go to my

8    colleagues with the details how it was taken away from her.

9    The bottom line is, she contacted her authorized retailer,

10   which is Sears, and so Sears made the -- Sears is the one who

11   made those arrangements.  And so in that circumstance --

12             THE COURT:  So she gives the washer back to Sears, and

13   then what happens to it?

14             MR. LICHTMAN:  And then apparently the washer is

15   shredded.

16             THE COURT:  Shredded by whom?  Sears?  Samsung?  Who?

17             MR. LICHTMAN:  Sears took it to a third party, a

18   facility in Ohio and had it shredded.  That's the best

19   information we have at the moment your Honor.

20             MR. CECCHI:  That's correct, Judge.

21             MR. LICHTMAN:  And under those circumstances, and we

22   want to be clear --

23             THE COURT:  We have one of those washers shredders,

24   okay.

25             MR. LICHTMAN:  And we want to be -- so under those

1    circumstances, we thought -- Mr. Cecchi and I were not involved

2    in the case in Indiana.  And under those circumstances, we

3    thought it prudent, let's get an assurance from the defendants

4    that they're not going to permit this to happen again.

5              THE COURT:  Okay.  And how long ago did that happen?

6              MR. LICHTMAN:  I sent that e-mail approximately two

7    weeks ago, and it was a follow-up on a conversation that I had

8    approximately three weeks ago.

9              THE COURT:  And when did the destruction of the washer

10   occur?

11             MR. LICHTMAN:  The washer was destroyed in January.

12             THE COURT:  In January.  And you learned about it

13   when?

14             MR. LICHTMAN:  I learned about it when I joined this

15   case.

16             THE COURT:  I didn't mean you, personally.

17             MR. SPRAGENS:  I think we learned about it in March,

18   your Honor.

19             THE COURT:  Okay.  So where's the fire?  What happens

20   in January, you learned about it in March.

21             MR. LICHTMAN:  The fire comes about when we say please

22   assure us -- again, this seemed to us like a very routine

23   e-mail that we sent Samsung.  Please assure us that you won't

24   destroy washers.  And their response was no.  And, your Honor,

25   I would point to page 12 in their brief, you know, you've made

 1    the observation, well, defendants have an obligation to
 2    preserve evidence.  Page 12 in the brief they say something
 3    very disturbing.  They talk about the expense of reserving,
 4    it's very expensive to store washing machines.  And that
 5    certainly gives rise to an inference that Samsung is not
 6    preserving evidence in this cases.  And if you read Samsung's
 7    brief, at no point in time -- they say we'll comply with the
 8    discovery obligations, parenthetically as we see fit.  At no
 9    point in time, they say we have not knowingly destroyed
10    washers, at no time do they say we won't destroy washers in the
11    future.  Instead, they say it's very expensive store washers.
12              THE COURT:  Oh.  And we'll get to you.  But I agree
13    with you, that the assurances are somewhat generic, that
14    they're aware of compliance with obligations in this
15    litigation.  That's not exactly factual, I agree with you, but
16    we'll get to that.  Okay.
17              But I get it, that you're nervous about it.  But what
18    is the efficacy of an order telling them:  Hey, remember those
19    obligations you have, well, you really have them.  What does
20    that accomplish?
21              MR. LICHTMAN:  Well, the courts have issued these
22    types of orders when in particular it appears that the party,
23    typically the defendant, the party that's the target of the
24    order, has a different interpretation of their ethical
25    obligations under the discovery rules, than their ethical

 1    obligations under the discovery rules.  And we would stress to

 2    your Honor, if you look at the declarations that I submitted,

 3    that the defendant submitted, respectfully, defendants have a

 4    different memory of the conversation than we have.  Had

 5    defendants ever simply said to us, in any terms at all, we are

 6    not destroying washers, we won't destroy washers, we would not

 7    be here seeking the evidence preservation order.  We would have

 8    our other pending motions.  The only reason we have the

 9    temporary restraining order is to get them to stop destroying

10    washing machines.  That's the only purpose of the TRO.

11             THE COURT:  Okay.  But, I mean, you get my point.

12    What I'm trying to figure out here is which of these two

13    situations do we have here.  There are some cases in which when

14    counsel calls his or her and says:  Please acknowledge that

15    today is Tuesday.  And that person's boss says:  We're not

16    giving them nothing, no.  That's a case of unpleasantness among

17    counsel or lack of cooperation among counsel.  If somebody is

18    really indicating, however, if situation 2 is you call them up

19    and say:  These washers are important evidence, please

20    acknowledge you're not destroying them.  And they say:  No, we

21    are destroying them, that's something else.  We're somewhere in

22    the middle, probably.  But I'm trying to figure out if there's

23    really an issue here or not.  So do you have anything else

24    other than Sears delivery of the washer to whoever destroyed

25    it?

1              MR. LICHTMAN:  Your Honor, we would also point --

2     their case stands very strongly for the proposition that this

3     Court is entitled to take into consideration who the defendant

4     in this case is.  And just because it's an atypical case, this

5     is not a defendant with a good history of preserving evidence.

6     Quite the opposite.  The Apple vs. Samsung Court condemned this

7     defendant in very severe terms for fundamentally, whether you

8     call it destroy it or failing -- expoliating evidence, it was

9     exactly the same thing.  And Judge Martini condemned this

10    defendant for it.  This Court is entitled to take note of who

11    the defendant is.  To some degree, I don't know that this has

12    to be complicated, which is precisely what my reaction to what

13    Mr. Oliss said in the first instance.

14              As far as the temporary restraining order, we simply

15    want assurance that:  A, they haven't been destroying washers,

16    and they take reasonable steps from destroying washers in the

17    future.  And how we achieve that, again, we are fundamentally

18    as surprised as the Court is that we're here on the TRO.  We

19    expect the Samsung to be:  Of course we are not destroying the

20    washers.  That is not how they responded.

21              THE COURT:  Okay.  Well, let's stick to that aspect

22    for a moment.  May I ask you to sit down and let me talk to the

23    other side.  I know there are other aspects to the application.

24    Let's deal with that for a minute.  Okay.

25              This is a case about defective, or even worse washers,

1    and he's asking you to say:  Oh, we're not going to destroy

2    that.  That doesn't seem so unreasonable to me.  What's the

3    problem?

4         MR. McDONALD:  Samsung is not destroying washers at

5    issue in this litigation.

6         THE COURT:  Why doesn't the Moore washer count?

7         MR. McDONALD:  Samsung didn't destroy the Moore

8    washer.

9         THE COURT:  Your retailer did?

10        MR. McDONALD:  Evidentally.  It's important to note

11   that if you hear what Mr. Lichtman said, based on the

12   representation of counsel that the destruction occurred prior

13   to the filing of the lawsuit, at which time there would have

14   been no obligation on the part of Samsung to preserve evidence,

15   it wasn't in the prevent or control.

16        THE COURT:  Would Samsung be willing to circulate the

17   equivalent, not about washing machines, would they be willing

18   to circulate to their retailers the equivalent of a:  If you

19   get washers that seems to have this problem, please don't

20   destroy that, absent authorization?

21        MR. McDONALD:  Your Honor, I don't know.  That

22   question has never been asked.  I don't know what authority

23   they might have that their vender agreement provides.  I guess

24   I'm not comfortable answering that question.  What I can tell

25   you, since it began back in March of this year, the company has

1    been advised with respect to its obligations, which it

2    thoroughly understands that litigation holds are in place.  And

3    that the notion of destruction of evidence is just misplaced.

4    And I'd have to feign a little bit of disagreement with Mr.

5    Lichtman's comments with respect to our communications leading

6    up to today.  Mr. Lichtman and the attorneys at the Starr law

7    firm have made allegations that Samsung has been destroying

8    evidence.  I asked on multiple occasions what the basis is for

9    that.  I had no basis to believe that was true.  I had no

10   knowledge, whatsoever.  My understanding was the company,

11   having spoken to people at the company, was fully complying

12   with the discovery obligations.  And I have never seen any

13   evidence such as it is until the filing of the show cause

14   application.  The notion simply that we refused to stop

15   destroying washing machines, the company is not destroying

16   washing machines.  And the other is, the focus of the

17   conversation was, if you believe that there goes some

18   violation, and I said directly, if you believe there's some

19   violation of my client's duty to preserve evidence, please tell

20   me, because this isn't something I want to find out later until

21   the application is filed.

22          THE COURT:  Here's what I want to know, I guess.  That

23   is, I can think of a hundred ways in which that statement could

24   be technically true, washers would be in the process of being

25   destroyed.  For example, is when one of these washers goes bad,

1    does it get sent to Samsung or does it get sent back to Sears,

2    or whoever the person is that bought it?

3          MR. McDONALD:  It may or may not.  Samsung doesn't

4    have complete control over every washing machine returned to a

5    retailer or repaired, so I can't make a representation that

6    Samsung necessarily would be in possession of every washing

7    machine that malfunctioned in the nature that we were talking

8    about in this case.  To the extent that Samsung does have

9    possession and custody and control of washers that have

10   experienced malfunction, of course we disagree with the

11   calculation.  To the extent that Samsung has that evidence, it

12   is being preserved.

13         THE COURT:  Well, to plaintiffs, I have a rhetorical

14   question, which is, given that representation, if it turns out

15   washers are being destroyed, wouldn't that be like the greatest

16   thing that ever happened to a plaintiff's attorney?

17         MR. CECCHI:  For the plaintiffs, Jim Cecchi.  What

18   we've heard from my perspective is rather remarkable.  The

19   Moore case was filed six months ago.  The other case was

20   exposed.  They knew all about it.  Their duty to preserve

21   evidence at the latest arose at that point in time.  They can't

22   confirm that they sent a lit hold, that their retailers have

23   gotten the lit hold.  You ask Mr. Lichtman about, where is this

24   duty to let us know rise.  We have a right to know --

25         THE COURT:  I'll get back to you.

1          MR. CECCHI:  But it wouldn't be -- to answer your

2    question.

3          THE COURT:  That was a simple question.  I'll get back

4    to you.  Let's not step all over his presentation.

5          MR. McDONALD:  Your Honor, I would just reiterate the

6    washing machine that Mr. Cecchi is referring to is in

7    possession and control of the plaintiff, who claims, says in

8    her affidavit that she contacted Samsung and she was given a

9    refund, prelitigation, and arranged through Sears, or Sears

10   Center, to remove the washing machine.  And beyond that, we

11   have double, triple hearsay after that purporting what happened

12   to it.  It was in the custody of the plaintiff.  To the extent

13   there has been any failure to preserve evidence, and I'm not

14   sure that any obligation -- to the extent there's been a

15   failure to preserve evidence --

16         THE COURT:  Okay.  But given that, look what's likely

17   to happen.  A consumer product goes wrong.  The plaintiff is

18   not going to keep -- by the way, I'm not jumping ahead of

19   myself.  I'm not assuming that the products are defective.  If

20   there's a defective product and it turns into a pile of scrap

21   metal and bolts, the plaintiff is not going to keep it in the

22   plaintiff's whose.  The plaintiff is going to keep it back in

23   the store and say:  Hey, this thing isn't working the way it's

24   supposed to.  We're not really talking about the plaintiff

25   preserving evidence.  The plaintiff gave it back to the person

1    the plaintiff bought it from.

2              Now, what happens then, isn't there a way we can do

3    the equivalent of a litigation hold in which your retailers,

4    when they receive a complaint, and when they get back a washer

5    of this kind, we'll hang onto it.  Or put it in storage.  Or

6    tell you so you can put it in storage.  You, Samsung, not you

7    personally.  Why can not that be done?

8              MR. McDONALD:  Your Honor, I don't know, the question

9    has never been asked before.  It may be something that can be

10   done, and it maybe somebody that is being done.  The way this

11   whole issue has been framed, is we have evidence that Samsung

12   is destroying evidence that we want you to stop.  And our

13   response has been, what I have had:  We're aware of nothing of

14   the kind.  Samsung is complying with discovery obligations.

15   And please tell us what you're talking about.

16             I'm not trying to avoid your question, your Honor.  I

17   understand why that's a reasonable suggestion.  I'm not

18   prepared to speak to the ability of the company to do that, but

19   I'd be happy to have that conversation.

20             THE COURT:  How long would it take for you to be able

21   to speak to that?

22             MR. McDONALD:  Certainly in light of today's events,

23   I'd be happy to contact the clients as soon as I can.  I can

24   make phone calls this afternoon.

25             THE COURT:  I mean, look, all I really want to know is

1    that -- I don't want the company because, you know, obviously

2    they're not, people who work at Samsung are not selling

3    appliances to people.  They're not at the level where the

4    appliance is when it goes wrong.  All I want to know is Samsung

5    is not closing its eyes and saying:  We're not destroying

6    anything.  Sears is.  That's not quite a satisfactory answer.

7    And I just want to know, assuming that washers have problems

8    and are being returned to anybody, you're in a relationship

9    with your seller, that they can be put aside for a while.  It

10   doesn't sound like an unreasonable request.  And if there is

11   evidence of this thing one way or the other, either the washers

12   don't have a defect or they do, it's going to be in the

13   washers.  So I think it's in everyone's interest that if there

14   is a defect, or claim of a defect, that the machine that

15   there's a claim about be held aside for a while.

16           MR. McDONALD:  Your Honor, I think that sounds

17   reasonable.  That hasn't come up in the conversation before,

18   I'd like to talk to the client about it.

19           THE COURT:  That's fair.  You don't have to commit on

20   your feet here.  Obviously, you have to talk to your client.

21   There may be reasons.

22           MR. McDONALD:  Your Honor, if I can say one thing that

23   comes to mind.  I think one concern might be the notion of a

24   guarantee that Samsung will be able to capture every instance

25   where there will be a complaint of this kind.  It's probably

1    not something the company will be able to do in the rare

2    instance of the failure in the nature described so, you know, I

3    just put that out there.

4              If I can return to one thing, the point about the

5    washing machine being in the possession of the defendant when

6    it was destroyed or shortly before.  It was not to suggest a

7    violation on the part of the plaintiff.  I think it was

8    rhetorical.

9              THE COURT:  I wasn't taking it that way.  I was

10   saying, look, that's at the other end of the distribution chain

11   from us, and I get that.  Okay.  Well, if this can be handled

12   on the phone, I'd appreciate that.  If you need a little more

13   time, I certainly can give you that.  It could be a large

14   undertaking.  I don't know how many washing machines we're

15   talking about, or how many complaints we're talking about.  But

16   if it's -- well, does anybody know how many washing machines

17   we're talking about?

18             MR. LICHTMAN:  Samsung, your Honor.  Samsung recently,

19   it's a little tough to find, Samsung recently added as part of

20   its website people can put in the model number of an infected

21   washer.  Plaintiffs would conclude from this, that Samsung

22   knows how many washers would come up as part of the washers

23   that they've sold.

24             THE COURT:  There's a few moving parts between one and

25   the other, and I see what you're saying.  But you can't --

1    there's no straight line between people who plug in their model

2    number and number of defective washers.  So that that's not

3    really it.  I just want to -- a ballpark.  That is, if I'm

4    asking for storage of a million washers, if I'm asking for

5    storage of a hundred washers, that's clearly reasonable.  I

6    want to know ballpark what we're talking about, if anybody

7    knows.

8         MR. CECCHI:  Your Honor, we had been contacted by 18

9    people.  Again, we're not -- people have called us and say that

10   their washers have blown up.  We, as part of our complaint,

11   found approximately, a little more than 20 people who said that

12   their washers had blown up.  And, again, these aren't final

13   numbers, or people who we found by Googling.  So it's not

14   scientific evidence.  We certainly hope we're not talking about

15   hundreds of washers that have blown up.

16        THE COURT:  I have no idea.

17        MR. LICHTMAN:  That would be extremely troubling,

18   again.  Samsung should know this, Judge, as Miss Moore called

19   Samsung the moment her washer blew up.  These people do

20   ultimately call Samsung.

21        THE COURT:  Possible.  Or they may call Sears or Home

22   Depot, or whoever.

23        MR. LICHTMAN:  We do know that the three plaintiffs

24   called Samsung.

25        THE COURT:  Okay.

1              MR. McDONALD:  Your Honor, the short answer is, I

2      don't know.  And you know we're happy to have the conversation

3      about that as well.  I think part of the trouble that we run

4      into is this sort of theatrical characterization that the

5      alleged defect has explosions and so we have to kind of get

6      past that.  I think we have some idea of what the nature of the

7      alleged defect is, and the client has been preserving evidence

8      that comes to it.  It's no secret that there have been some

9      involvement with the CPSE that Samsung is cooperating in.  And

10     so there's every reason to believe that there's no game being

11     played here, and there's no allowing venders to destroy it so

12     that Samsung can deny that it did.  That's not happening.  I

13     don't have numbers for you.

14             THE COURT:  Okay.  Alright.  Here's what I'm going to

15     ask you to do.  I'm going to ask you to at least get on the

16     phone this afternoon with your client.  I'm not saying they can

17     turn on a dime, or they can figure out in a half hour what's

18     feasible, and whether it's feasible.  But basically I want this

19     to happen on two fronts.  Number one, I want counsel to get

20     together and figure out what could reasonable work here.  That

21     is in a products liability case, look, it is never the case

22     that you get basically every single defective product and

23     inspect it.  You look at some of them, you figure out what the

24     defect is, you look at the sample.  Again, depending on the

25     numbers here, and we don't know what the numbers are, it's a

 1    little crazy to say we have to stockpile every single washer.

 2    That is an awful lot to ask.  And I've never seen it in other

 3    products liability cases that you physically have to have every

 4    single defective product under one roof to look at.  It seems

 5    to me counsel ought to be able to work something out in terms

 6    of getting access to a reasonable number of these, you know,

 7    physical items for inspection.  I mean, isn't that going to

 8    happen?  But in the meanwhile, what would be a reasonable thing

 9    to ask Samsung to do?  I think in order to ensure that you have

10    enough washers to look at when discovery happens here, what

11    would be reasonable?  What could Samsung do?  What could they

12    do to have ten, or fifteen, or whatever you think you need to

13    look at there in the order discovery process that's going to go

14    on in this case, you can have a look at it.  I'm not trying to

15    lay an expoliation trap for you, and I don't want to do that.

16    I want counsel to get together and figure out what could be

17    reasonable.  So there's a reasonable obligation on Samsung and

18    not a gotcha expoliation demand.  And if it isn't then, you

19    know, we're all going to forget about the underlying claims and

20    try an expoliation case.  That's not going to happen.  I'm

21    going to ensure that that doesn't happen.  So why don't you

22    talk a little bit.  And once you talk, maybe make a phone call,

23    and tell me where you are after that.  I'll be around all

24    afternoon.  But, the -- anyway, that's as far as we can get at

25    the moment on that.

1          What else do we have to deal with today?

2          MR. CECCHI:  Let's follow your suggestion.  That's

3     absolutely reasonable.  And what the plaintiffs would want, a

4     meet and confer, so we can note that a representative sample

5     that is being conferred, and we can get to a reasonable number

6     so we can come back to the Court with an analysis on what's

7     going on there.  It segues into another issue under Rule 26

8     which we've talked about in our papers, which is other types of

9     preservation that should be undertaken right now in this case,

10    and your Honor talked about expoliation

11         THE COURT:  Let's ping-pong back to them, and I'll

12    call you again on this next issue.

13         MR. CECCHI:  Our feeling, and believe it would be in

14    the context of the meet and confer, about getting to a

15    reasonable preservation on the physical evidence.  And I agree

16    with your Honor a hundred percent, we want to try the design

17    defect case and not the expoliation cases.  That's why, in many

18    cases, defendants welcome -- they give them parameters, and

19    then what they have to do, and this expoliation trap is not set

20    I would suggest under our local rule which says you have to

21    meet and confer, about E discovery and E data to come up with a

22    defective, what they're destroying and what they're not

23    destroying, that that's critical as well.

24         THE COURT:  Alright.  This isn't TRO material.  You're

25    going to do that at your Rule 16 conference.

1        MR. CECCHI:  I think it segues right -- we're going to

2    come back to your Honor on the PI.  It protects them as much as

3    it protects us.  We have that meet and confer, our local rule

4    requires it, that we have that meet and confer as soon as

5    practicable.

6        THE COURT:  And so you shall.  But I'm not going to

7    deal with our -- you're going to figure out what those

8    parameters are, and you're going to work it out with the

9    Magistrate Judge.  That's not injunctive relief material as far

10   as I'm concerned.  I'm not saying your concerns won't be

11   addressed, I'm saying they'll be addressed in a different

12   forum.

13        What else do we have to address today?

14        MR. LICHTMAN:  We have two other issues, and one is

15   very succinct, which leads into the expedited discovery

16   conversation which Mr. Cecchi will handle for us.  One is

17   plaintiffs' request for a preliminary injunction we ask.  After

18   expedited discovery, we've asked for injunctive relief warning

19   the people who own these washing machines that -- and, again,

20   we're -- our specific request will be determined by discovery,

21   warning people not to stand right next to them while they're in

22   use.  And Samsung addressed this in their papers and so we'd

23   just like to respond.

24        It does dovetail, and the preliminary injunction

25   hearing would not be for a few months, it dovetails why

1    expedited discovery is.  Samsung's first argument is the Court

2    had no power to order Samsung to issue a warning.  Samsung is

3    completely wrong under Rule 23D.  Page 12 of our brief goes

4    through a number of case for the proposition that this Court

5    has broad power to issue orders governing communication with

6    absent class members.  Samsung's brief never engages those

7    cases or Rule 23D.

8              And we would also point the Court --

9              THE COURT:  Yeah, but on day one, when there's not

10   even a class.

11             MR. LICHTMAN:  That's absolutely, your Honor.  The

12   Court has the power to immediately issue orders, particularly

13   here where we have a safety issue, and, again, this would

14   dovetail to Mr. Cecchi's conversation.  This is one of the

15   reasons we need expedited discovery.  Part of the discovery we

16   just had is how many are blowing up.  And this is one of the

17   reasons we need expedited discovery to prove to the Court that

18   there's a safety issue warranting this type of immediate

19   warning.

20             THE COURT:  And if it is a safety issue, why is the

21   CPSC not on this?  I was exaggerating for an effect, I suppose.

22   You're asking me for a product recall, aren't you kind of?  Why

23   is it that I should be sending warnings to consumers?

24             MR. LICHTMAN:  So, your Honor has asked two questions.

25   Let me answer the first.  Isn't the CPSC on this?  And the

1    second is why should I be sending warnings?

2              Your first question is, what is the suit?  We were

3    very glad to see that after we filed this lawsuit, that the

4    Consumer Product Safety Commission has become involved.  We do

5    not know the extent of their involvement, but unfortunately the

6    Government's involvement is not necessarily as fast as private

7    party involvement.  The CPSC does have a warning on the

8    website.  It's awfully tough to find.  It's certainly better

9    than nothing.  It is not the same as clear effective warnings

10   to protect the class.

11             To your other question, which goes, does the Court

12   have the power to issue warnings?  The answer is, it really

13   depends what expedited discovery shows.  We would point to the

14   Court to the Saw Horse case, 2013, that expedited discovery is

15   appropriate when plaintiffs are seeking this type of injunctive

16   relief.

17             Your Honor, I can't prove to you without that limited

18   discovery that we've asked for that warnings is appropriate.

19   But what we can say is that this Court unquestionably has the

20   power that, if we prove that these machines are dangerous, this

21   Court has the power to order Samsung to warn people.  It is not

22   the type of thing that normally comes up.  Normally we would be

23   cooperating.  Normally we would be engaged in a dialogue with

24   Samsung.  They have totally refused to talk to us.

25             MR. McDONALD:  That's absolutely untrue, your Honor.

1              THE COURT:  Listen, I don't want to get into that.

2      I'm not going to start paraphrasing phone calls between

3      counsel, I'm just not.

4              MR. LICHTMAN:  Yes, your Honor.

5              THE COURT:  Okay.

6              MR. LICHTMAN:  So, your Honor, the bottom line here is

7      that we're not here to get an injunction today.  The injunction

8      was brief, and it is relevant only to the extent that it

9      touches on whether expedited discovery here is appropriate.

10     It's not a question of -- we are not required to prove that the

11     injunction has merit today.  And in fact we would absolutely

12     admit that right now we cannot show that we are more likely to

13     succeed than not.  This is why expedited discovery is

14     appropriate.  And I'll turn it over to Mr. Cecchi --

15             THE COURT:  How about if I order you expedited

16     discovery and I send out a warning to consumers and they win

17     their motion to dismiss?

18             MR. LICHTMAN:  The expedited discovery would --

19     presumably the motion to dismiss would be handled at least

20     either contemporaneous or prior to the December preliminary

21     injunction hearing.  We don't need it immediately, but

22     plaintiff's are required under the rules to post a bond.  If

23     the warning is sent out and Samsung wins, we have to post a

24     bond that covers a cost to Samsung.

25             THE COURT:  And what kind of bond would cover their

1    damage from sending out a warning to consumers, "don't stand

2    next to your washing machine"?  What kind of bond?

3                MR. LICHTMAN:  The cost of notice.

4                THE COURT:  The cost of notice.

5                MR. LICHTMAN:  That question is presupposing that

6    maybe these washing machines don't blow themselves apart.

7    That's why we'd like expedited discovery, so we can prove to

8    the Court that this is in fact what's going on.  The only way

9    we can get expedited discovery, there we are likely to prevail.

10               If your Honor is uncomfortable with this type of --

11   there's no reason why we can't simply move on an expedited

12   track.  This is not a normal situation.  We don't have a washer

13   that simply -- that plaintiffs allege just doesn't function

14   exactly the way it intends.  We have a washer that blows apart

15   in plaintiffs' homes, and Samsung has characterized this as

16   dramatic.  We've included pictures with our complaint.  People

17   describe literally like a bomb going off.  These things spin at

18   1,100 revolutions per minute.  So this is a very serious issue.

19   This is not a typical situation.

20               THE COURT:  Alright.

21               MR. LICHTMAN:  And with the Court's permission -- I'm

22   sorry, I was going to turn it over to Mr. Cecchi.

23               THE COURT:  Done, okay.

24               Your turn.

25               MR. McDONALD:  Your Honor, this is very much a typical

1    situation.  This is very much a garden variety consumer class
2    action.  This is a consumer class action in which not all of
3    the defendants have even been served, in which the pleadings
4    are not closed.  I've had several conversations with Mr.
5    Lichtman over the last several months, and one of the things I
6    told them, they've agreed to the extension that we intend to
7    file the motion to dismiss all the claims in this case.  We are
8    going to do that.  We think it's meritorious.  We think the
9    cart is way ahead of the horse here in terms of talking about
10   the liability in advance of even having those issues addressed.
11   There is a process for handling a case like this.  It would --
12   it happens all the time, and there's nothing particularly
13   special about this case, so there certainly is not --

14            THE COURT:  Let me give you a hard time for a minute.
15   That is, when we talk about getting to the merits ahead of
16   time, that's what you always do in the preliminary injunction.
17   Isn't that what we always do, likelihood of succeed?

18            MR. McDONALD:  You don't have a --

19            THE COURT:  Likelihood of succeed.

20            MR. McDONALD:  But, your Honor, the relief that they
21   seek through the preliminary injunction order that they seek is
22   a determination of liability and verification of their theory
23   of the case, such that this request warning would issue.  This
24   is not -- expedited discovery arises with respect to the
25   unserved defendant.  If they didn't, is the hold, it's

1    internally inconsistent, when they actually want to have

2    documents and other evidence produced.  But settling that a

3    side, it goes to the whole case.  Expedited discovery,

4    discovery for a specific purpose, it's an attempt to jump start

5    or bypass the process.  It's going to be directed in part,

6    naturally the named plaintiffs, there is no class

7    representation in this case.  So the notion that there's a

8    class that can be given warning jumps so far ahead of the

9    process.  That it's not even conceivable, you can not even have

10   some sort of undefined class on the basis of this litigation

11   where the adequacy of these plaintiffs to serve as class

12   representatives will not be tested at some time.  There's a lot

13   of supposition going on here.

14          I'm struck by Mr. Lichtman's comment, that these

15   washing machines don't explode.  I submit that that's precisely

16   what the Court, this entire proceeding from the plaintiffs'

17   perspective is marked by the plaintiffs to shift the burden of

18   proof.  Instead of seeking a TRO, you seek a motion, which is

19   totally improper.  And now we're being presented with arguments

20   that suggest that Samsung has, as a preliminary matter, an

21   obligation to present evidence to have a hearing to demonstrate

22   that its washing machines do not explode.  That's not the

23   purpose.

24          THE COURT:  Alright.  Let me ask, is there any -- and

25   I'll ask both sides, is there evidence thus far that anyone has

 1    been physically harmed?

 2              MR. CECCHI:  Yes, your Honor.

 3              THE COURT:  What is the evidence?

 4              MR. CECCHI:  There's a situation in California where

 5    the lady's jaw was broken.  What's the name of that plaintiff?

 6    Simone.  The complaint is part of the record.

 7              THE COURT:  I hear --

 8              MR. McDONALD:  I'm sorry, I apologize.  It was injured

 9    by the washer, individual action was taken.  It raises another

10    issue which is hardly news to the extent I think that that case

11    is hardly relevant, that they've been aware of it for years,

12    certainly before this action was even commenced, a notion that

13    that gives rise to some sort of urgency.

14              THE COURT:  Alright.

15              MR. CECCHI:  Judge, very briefly on the expedited

16    discovery, just a few points.

17              THE COURT:  I'll hear you on it.

18              MR. CECCHI:  Yes.  Thank you, Judge.

19              We are not trying to shift the burden to Samsung on

20    the preliminary injunction.  We have the burden.  And as your

21    Honor points out --

22              THE COURT:  You're trying to jump the line on

23    discovery, and that's the reason --

24              MR. CECCHI:  And I totaled agree with your Honor.

25              THE COURT:  Even though they know they're not going to

 1       get it.  The reason they are, the facts as we know them now,

 2       are unique and are extraordinary.  Under 23D, we feel that as

 3       punitive fiduciaries, a duty to present facts to your Honor

 4       which we think effectively warn them about the dates of these

 5       washers, the washer itself has a setting to put in bedding

 6       material into it.  Heavy linens and bedding material.

 7               Buried in Samsung's website it says:  Don't use the

 8       bedding because they believe that those heavy objects within

 9       the washer are related to the imbalanced lanes.  They called it

10       imbalanced lanes, and that's what causes the damper to fall

11       apart.  We feel we can marshal the facts in a reasonable

12       targeted way to come back to your Honor and say:  Judge, these

13       washers can explode.  People are at risk.  That's the authority

14       that your Honor would have under 23D.

15               Our expert, when he looks at the washers, will be able

16       to come back to you and say:  Here's the defect.  Here's why

17       it's dangerous.  And the idea that we've sat on our rights,

18       these washers are out there now, they're unaware of the risk

19       that they pose, and we all should be working together as

20       responsible plaintiffs lawyers to get to the heart of this

21       problem quickly.  I would think that it's the defendants'

22       position that if there's nothing wrong with this, they want to

23       get it down as quickly as possible.

24               THE COURT:  What kind of -- look, when we talk about

25       expedited discovery, he's right, we're usually talking about

1    something targeted, other than saying "I want discovery in this
2    case to be ten times as fast as this case", what are you
3    saying?  What are you after?  Is there a narrow set of things
4    that you can ask for?

5            MR. CECCHI:  I don't want to concede to that.  I don't
6    want it ten times as fast as we formally -- there are a narrow
7    set of items that we think we need.  We put them in our brief.
8    And we're certainly willing to meet and confer with the
9    defendants to the extent we say any of these items are
10   burdensome.  The principal items are technical diagrams,
11   engineering drawings.  The documents related to the service
12   bulletin which they issued.  They have those materials,
13   presumably.  Look let's --

14           THE COURT:  I thought this was aimed at a warning to
15   consumers?

16           MR. CECCHI:  It is.  Because we what he need to do,
17   Judge, is get it to an expert.

18           THE COURT:  The only issue is, the consumers need to
19   be warned.  It only matters if --

20           MR. CECCHI:  We need to prove to your Honor at the
21   preliminary injunction stage that we have a likelihood of
22   success on the merits.  We know these washers are exploding.
23   It's almost the thing speaks for itself services of the writer.
24   It almost speaks for itself.  But we do have a responsibility
25   to warn as many as we can.

1          As your Honor has pointed out, the bond will protect

2     them against the cost, but they don't want to warn if there's

3     no reason to warn here.  Twenty-three D is used in just this

4     situation, and we need to make your Honor comfortable.  And we

5     need to make your Honor comfortable, if we get those targeted

6     items, he's already, we need the facts.  It's not burdensome.

7     And in the extraordinary situation when consumer is standing

8     next to the washer and can get seriously injured, I can ask

9     your Honor, why not?  It's the right thing to do.

10          THE COURT:  Counsel, let's stop for a moment.  Come

11     forward, let's talk for a second.

12          (Off-the-record discussion)

13          THE COURT:  Okay, back on.  Just to memorialize our

14     conference.  My sense of this is that these are matters that

15     can very easily be handled in the normal Rule 16 conference in

16     front of the Magistrate.  I am certain that the Magistrate will

17     see not all but some of the urgency that you identified.  That

18     is, this isn't somebody who's, you know, spangles are falling

19     off the sweatshirt or something.  This is something that's

20     allegedly not working properly and allegedly could be dangerous

21     to someone.  They both seem to be cases of injury except for

22     perhaps the one you identified, which is, in any event, the

23     subject of litigation, or waited several years.  So I am

24     certain Magistrate Judge Hammer will see some of the urgency

25     here and will not put you on an unexpedited track.  And that he

1    will set reasonable deadlines so that discovery can be had in a

2    reasonable orderly fashion to put you in a position to make up

3    your mind whether you have the basis of a preliminary

4    injunction application.  I'm not putting it on for a

5    preliminary injunction hearing today, I don't see a sufficient

6    basis for that.  Perhaps at some point in the future, when you

7    have gotten some of this discovery, and again you're not

8    overstating your case, you've acknowledged you don't have a

9    basis today.  But if and when you get your basis, you can bring

10   that motion.  But farther than that, I'm not going to go.

11          Meanwhile, you should be conferring about a reasonable

12   number of products being set aside so that they can be

13   inspected in an usual order of process or discovery.  I'm not

14   putting anybody in the position, as I say, I'm not -- this is

15   not going to be expoliation setup.  This is going to be making

16   sure the plaintiffs have got reasonably what they need, and

17   that you defendants have set aside a reasonable number which

18   you'll arrive at in conversation of these machines because

19   experts will have to inspect them, assuming we get that far.

20          Counsel for defendants has offered to contact his

21   clients and try to work out whether there can be something

22   arranged so that in the meantime these machines don't get

23   destroyed or disappear just because they're broken and nobody

24   cares about them.  Just to make sure retailers, whoever, are

25   not thoughtlessly destroying them or throwing them away in case

1    they are needed for litigation.  But those two things are -- I

2    want those two things considered together, a reasonable number

3    of machines and making sure they don't inadvertently get

4    destroyed by the retailers or the people who are actually at

5    the end of the distribution chain where the machines are.

6           And the only reason I raise it is because my instinct

7    is probably these broken machines never get to Samsung.  It may

8    not do the job in terms of preserving enough for this

9    litigation to go forward.  Okay.  So do that, report back to me

10   if you need to.  Meanwhile, I will make sure that Magistrate

11   Judge Hammer has you on for a reasonable early date for a Rule

12   16.  I take it a date has not been set?

13          MR. McDONALD:  Your Honor, would that date follow the

14   filing of a motion to dismiss?

15          THE COURT:  No, it will happen soon.  And he likes to

16   have them as early as he can.  I'll see that he does.  And

17   finally the motion to dismiss may be one of the things on the

18   agenda at the Rule 16 conference.

19          MR. McDONALD:  Your Honor, I understand we have a

20   deadline for our motion to dismiss, which is October 22nd, our

21   motion to dismiss will be filed.  I wanted to make sure --

22          THE COURT:  That's --

23          MR. McDONALD:  I'm sorry, your Honor.

24          THE COURT:  Just because that's your usual time to

25   answer.

 1          MR. McDONALD:  Yeah.

 2          THE COURT:  Yes, there is -- if that's the -- if you

 3     don't need an extension on that, fine.  If you don't -- if you

 4     get before that, otherwise you file it.  He may need to set up

 5     a briefing schedule.  However, maybe these motions to dismiss,

 6     and these cases are sometimes quite large, but again there may

 7     be another thing on the agenda for the Rule 16, for getting a

 8     reasonable briefing schedule for that.  Who knows.  I'm just

 9     spit balling.  It may be that certain parts of the motion to

10     dismiss, that certain parts of the discovery might be put

11     second instead of first, I don't know.  But you can talk about

12     those kinds of things.

13          MR. McDONALD:  Alright.  Thank you, your Honor.

14          THE COURT:  Alright.

15          MR. CECCHI:  Thank you, Judge.

16          THE COURT:  Okay.

17          MR. LICHTMAN:  Thank you, your Honor.

18          THE COURT:  Thanks, everybody.  I'll draft, as I sit

19     here, I have no idea what an order would look like, but I'll

20     think of something into a kick in the pants.

21          MR. CECCHI:  Thank you, Judge.

22          (Matter concluded)

23

24

25