IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUZANN MOORE, MICHELLE SOTO FIELDER, MELISSA THAXTON, JO ANN OBER, STEVEN POST, COLIN WELSH, TODD WATHEN, HARVEY ROSS, RHODA TORTORICI, WILLIAM LOSEY, THERESA DZURENDA, ANDRES LINSEY-BELL, THOMAS DeLUCA, SYLVIA DeLUCA, and DANIEL ROBINSON, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS SIMILARLY SITUATED,<br><br>   Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD.,<br>   Defendants. | Case No. 2:16-cv-4966 |

## FIRST AMENDED CLASS ACTION COMPLAINT

1. Samsung designs, manufactures, markets, advertises, sells, warrants and services washing machines that are prone to catastrophic failure: they explode during normal use. Indeed, Samsung admits that it has received 733 reports of its washing machines blowing themselves apart, including 9 reported personal injuries.

2. Samsung has known that its washers explode since at least 2013. But it refused to acknowledge the obvious safety defect until forced to do so by news coverage of this litigation and a resulting CPSC investigation.

3. On November 4, 2016, Samsung stated that it was "recalling" 34 washer models that were prone to exploding. The recall, however, neither protects consumers adequately nor compensates them fairly (much less make them whole). Under the recall, Samsung reinforces the top of consumers' washers and puts a new label on consumers' machines that instructs them

not to use the "bedding cycle" and instead to wash bedding on the "gentle cycle" only.  In the alternative, Samsung offers a sliding-scale rebate (as little as $24) that is simply an attempt to make the consumers that Samsung injured pay for another new Samsung washer.

4.    Even after getting caught selling a product it knew to be dangerous and defective for years, Samsung refuses to do the right thing to protect its customers.  Plaintiffs thus respectfully ask this Court to enjoin Samsung from further sales of the 34 washer models at issue in this litigation ("Washing Machines"), ensure that Samsung has stopped allowing evidence related to these explosions to be destroyed, order Samsung to inform all potential class members about the pendency of this litigation, order that Samsung is liable for all property damage and personal injury caused when its Washing Machines explode in the future, hold that customers are entitled to rescind their purchase of Samsung's Washing Machines, and declare the recall inadequate as a matter of law.

5.    Plaintiffs also seek money damages.  They should receive a full refund because, among other things, Washing Machines that cannot be used safely have literally no value.  In the alternative, Plaintiffs should receive the difference in value between a fully functional washing machine and the Washing Machines that Samsung actually sold or the diminished value of their current Washing Machines.  Plaintiffs also seek the monetary value of all property destroyed or damaged by one of the Washing Machines and all costs incurred as a result of Samsung's purported "repair" of the Washing Machines.

6.    All allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

1328245.11

## THE PARTIES

**A.**    **Plaintiffs**

**1.**    **Michelle Soto Fielder**

7.    Plaintiff Michelle Soto Fielder is a resident of McAllen, Texas.

8.    Fielder purchased a Samsung Washing Machine (Model Number WA5471ABP/XAA; Serial Number Y0IK54BB901654X) in June 2012 from Lowes in McAllen, Texas.

9.    As an authorized retailer of the Samsung Washing Machines, Lowes acted as Samsung's agent in selling Fielder her Washing Machine.

10.    In addition to any manufacturer's warranty which attached to her purchase of the Washing Machine, Fielder also purchased an extended warranty.

11.    Fielder purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

12.    Fielder used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.

13.    Although Fielder's Washing Machine had required some maintenance work in the past, it had never come apart violently and/or exploded prior to February 9, 2016.

14.    On February 9, 2016, Fielder placed a small load of laundry in the Washing Machine and started it.  Shortly thereafter, the Washing Machine violently exploded damaging Fielder's real and personal property.  The amount of force, as well as the sound produced by the explosion, initially led Fielder to believe that something had crashed into her home and come through the roof.

15.    Fielder's Washing Machine exploded with such ferocity that it penetrated the interior wall of her garage, where it was located.  The dent left at the Washing Machine's point

1328245.11

of impact was so deep that it pushed through into Fielder's living room, which shares a wall with her garage.  The following photographs depict Fielder's Washing Machine following the explosion.



1328245.11





1328245.11

16.     After her Washing Machine exploded, Fielder contacted Lowes as well as her warranty provider to report the explosion event.

17.     Fielder also attempted to contact Samsung subsequent to the explosion of her Washing Machine, but was never successful in speaking with a live representative of Samsung.

### 2.    Suzann Moore

18.     Plaintiff Suzann Moore is a resident of Fishers, Indiana.

19.     Moore purchased a Samsung Washing Machine (Model number WA50F9A8DSW/A2; Serial number Y78JSAUDA00995D) in January 2014 from Sears in Fishers, Indiana.

20.     As an authorized retailer of the Samsung Washing Machines, Sears acted as Samsung's agent in selling Moore her Washing Machine.

21.     Moore purchased the Washing Machine new, and it was in pristine condition and without any perceivable damage or defect.

22.     Moore used the above referenced Washing Machine solely for its intended purpose as a personal home appliance.

23.     For almost two years, Moore's Washing Machine operated without any problems or malfunctions, and never required any repairs.

24.     On the morning of December 23, 2015, Moore placed a load of laundry in the Washing Machine and started it. Shortly thereafter, the Washing Machine violently exploded, damaging real and personal property, including a Samsung manufactured dryer which had been located next to the Washing Machine. The following are photographs of Moore's Washing Machine after the explosion:





25.    On December 28, 2015 and in subsequent conversations, Moore contacted both

Samsung and Sears to report what had happened to her Washing Machine.  She told them that

her Washing Machine caused damage to her dryer.

1328245.11

26.     In response to Moore's reporting of the incident described above, Samsung informed her that, because her Washing Machine was beyond its one year manufacturer's warranty period, she was required to direct any and all complaints to Sears.

27.     Sears dispatched a representative to Moore's home on December 30, 2015 to investigate and inspect the Washing Machine.  Following that inspection, Moore was informed that the washer had "exploded" causing damage to the machine to such an extent that it was uneconomical to perform repairs thereon.

28.     Moore later learned that hers was not the only Washing Machine to have "exploded" in this manner.

29.     After Moore had been without a washer for a month and spent countless hours on the phone, Samsung finally agreed to reimburse her for the defective Washing Machine, notwithstanding that it malfunctioned outside of its one year warranty.

30.     In order to receive her refund, Moore was required to allow the Washing Machine to be removed from her possession.

31.     Upon information and belief, Samsung or its agent(s) removed the Washing Machine from Moore's home.

32.     Samsung and/or its agent(s) took possession of the Washing Machine with knowledge that it had exploded while being operated consistent with its intended purpose.

33.     Notwithstanding the knowledge that the Washing Machine had exploded while operated for its intended purpose, and that it was, therefore, defective, Samsung and/or its agent(s) destroyed what remained of Moore's Washing Machine without performing any investigation or inspection into what caused it to explode.

### 3.     Melissa Thaxton

34.     Plaintiff Melissa Thaxton is a resident of Dallas, Georgia.

35.    Thaxton purchased a Samsung Washing Machine (Model number WA400P

JHDWR/AA 02; Serial number Y69Q5AEF100111A) on May 7, 2015 from Home Depot in

Acworth, Georgia.

36.    As an authorized retailer of the Samsung Washing Machines, Home Depot acted

as Samsung's agent in selling Thaxton her Washing Machine.

37.    The Washing Machine Thaxton purchased was a "floor model," but had never

been operated, was new, in pristine condition and without any perceivable damage or defect.

38.    Thaxton used the above referenced Washing Machine solely for its intended

purpose as a personal home appliance.

39.    For eleven months, Thaxton's Washing Machine operated without any problems

or malfunctions, and never required any repairs.

40.    On the morning of April 8, 2016, Thaxton placed a load of laundry in the

Washing Machine and started it.  While the Washing Machine was on its final spin cycle, it

violently exploded damaging Thaxton's real and personal property, including her Samsung

dryer, vinyl flooring, drywall, a shelving bracket and her dog crate.  The following photographs

depict Thaxton's Washing Machine, and the resulting damage, following its explosion:



1328245.11





1328245.11

41.     At the time the Washing Machine exploded, Thaxton was standing next to it, removing items from her clothes dryer.  Thaxton describes the sound and force of the Washing Machine's explosion as if "a bomb went off."  Thaxton's four year old son was in very close proximity to the Washing Machine when it exploded and in the moments immediately following the explosion.

42.     After the explosion, which blew the top of the machine off and caused the entire Washing Machine to make a quarter turn, Thaxton witnessed the Washing Machine's drum continue to spin, violently impacting the sides of the Washing Machine until it came to a stop.

43.     After her Washing Machine exploded, Thaxton immediately contacted Samsung to report the explosion event and was told that a customer service representative would return her call later in the day.

44.     Approximately six hours after her Washing Machine exploded, Thaxton received a telephone call from Andrew Lugo, a Samsung CSD-Risk Manager.  During their telephone conversation, Mr. Lugo admitted to Thaxton that Samsung had received multiple prior complaints of its Washing Machines exploding in identical fashion as Thaxton experienced.

45.     On April 8, 2016 Thaxton also received an email communication from Mr. Lugo, Samsung CSD – Risk Manager, acknowledging their verbal communication, the explosion event, requesting photographs of the Washing Machine and Thaxton's receipt documenting her purchase.

### 4.     Jo Ann Ober

46.     Plaintiff Jo Ann Ober is a resident of Melbourne, Florida.

47.     Ober purchased a Samsung Washing Machine (Model Number WA48H7400AW/A2; Serial Number 0BHH5AUF700707Y) in February 2015 from Lowes in

1328245.11

Viera, Florida.  She paid approximately $633.  As an authorized retailer of the Samsung Washing

Machines, Lowes acted as Samsung's agent in selling Ober her Washing Machine.

48.    Ober purchased the Washing Machine new, and it was in pristine condition

without perceivable damage or defect.  Ober used the above-referenced Washing Machine solely

for its intended purpose as a personal home appliance.

49.    On approximately a dozen occasions in the time she has owned the Washing

Machine, she has received warnings that the load was unbalanced, usually when washing

bedding, beach towels, and other bulky items.  Each time, the Washing Machine spin cycle

stopped and reverted to the wash cycle.

50.    Ober's Washing Machine has experienced excessive vibration on many occasions.

51.    Since Ober learned about the safety risk posed by the Washing Machines, she has

changed her washing habits and no longer stands near the Washing Machine while it is in

operation.  She now keeps the laundry room door closed while doing laundry to minimize the

risk of injury to herself and others.

52.    Had she known about the defects, Ober would not have purchased the Washing

Machine.

### 5.    <u>Steven Post</u>

53.    Plaintiff Steven Post is a resident of Andover, New Jersey.

54.    Post purchased a Samsung Washing Machine (Model Number

WA56H9000AW/A2; Serial number 0BGH5AEF300138M) in May 2014 from P.C. Richard &

Son appliance store in Succasunna, New Jersey.  He paid $1099.97.  As an authorized retailer of

the Samsung Washing Machines, P.C. Richard & Son acted as Samsung's agent in selling Post

his Washing Machine.

55.     Post used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.  Post purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

56.     Together Post and his wife ("the Posts") have a family of nine, including seven children.  They depend on having a large, functioning washing machine to meet the needs of their family.  Thus, one of the primary reasons Post selected this Washing Machine was its large capacity.

57.     Post learned that his Washing Machine was affected by the recall by visiting Samsung's website and entering his model and serial number into the website.

58.     Upon learning that their Washing Machine is prone to exploding and causing injury and property damage, the Posts immediately ceased using their Washing Machine in the manner they had previously.  Due to the safety risk, the Posts no longer run the Washing Machine when they are eating dinner because the Washing Machine is on the other side of the wall from their dining room.  They also do not run the Washing Machine at night while their family is sleeping or when they are away from home.

59.     The solution Samsung has offered customers—to use the lower-speed delicate cycle when washing bedding, bulky or water-resistant materials—is insufficient for the Posts because the lower-speed cycle on their Washing Machine does not adequately clean bedding in their experience.

60.     Because the Washing Machine does not function as advertised and in fact places their family in danger, the Posts intend to purchase a new washing machine from a brand other than Samsung.

61.     Had he known about the defects, Post would not have purchased the Washing Machine.

### 6.     Colin Welsh

62.     Plaintiff Colin Welsh is a resident of Woodland Hills, California.

63.     Welsh purchased a Samsung Washing Machine (Model Number WA45H7000AW/A2; Serial Number 0BHE5AUGA29806D) in January 2016 from Home Depot in Woodland Hills, California.  He paid $592.96.  As an authorized retailer of the Samsung Washing Machines, Home Depot acted as Samsung's agent in selling Welsh his Washing Machine.

64.     Welsh used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.  Welsh purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

65.     Upon learning that his Washing Machine is prone to exploding and causing injury and property damage, Welsh ceased using the Washing Machine in the way he had used it previously.  He and his family members no longer enter the laundry room when the Washing Machine is running its spin cycle, for fear that it may explode and injure someone.  Because the Washing Machine abuts his daughter's bedroom, he is very worried about the risk to her safety.

66.     The so-called "repair" offered by Samsung in its recall does not make the Washing Machine safe enough for Welsh to use and operate the Washing Machine.  Furthermore, it does not allow him to use many of the features of the Washing Machine that he paid for.

67.     Had he known about the defects, Welsh would not have purchased the Washing Machine.

### 7.    Todd Wathen

68.    Plaintiff Todd Wathen is a resident of Tuscola, Illinois.

69.    Wathen leased a Samsung Washing Machine (Model Number WA456DRHDSU/AA; Serial Number Y6BP5AUF200510T) on May 21, 2014, from Aaron's in Mattoon, Illinois; he purchased the Washing Machine outright on June 9, 2015.  Wathen paid $3,286.58 for his Washing Machine and a matching dryer.  As an authorized retailer of the Samsung Washing Machines, Aaron's acted as Samsung's agent in selling Wathen his Washing Machine.

70.    Wathen used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.  Wathen leased/purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

71.    Wathen only found out about the Recall because he was looking for information online about a moldy smell in his Washing Machine.  He then visited Samsung's website, entered the model and serial number of his Washing Machine, and confirmed that it is affected by the Recall.

72.    Since learning of the safety risks involved in operating his Washing Machine, Wathen is afraid to leave the house or go to bed with the washer running.  He only washes small loads of laundry, which takes more time and increases operating costs.

73.    Wathen periodically hears a thumping sound coming from his Washing Machine; when that happens, he shuts the Washing Machine off right away out of fear that he or his property will be injured or damaged.

74.    Had he known about the defects, Wathen would not have purchased the Washing Machine.

1328245.11

### 8.    Harvey Ross

75.    Plaintiff Harvey Ross is a resident of Fresno, Texas.

76.    Ross purchased a Samsung Washing Machine (Model Number WA48H7400AP/A2; Serial Number 0D8Q5AEG100954P) in April 2015 from Conn's HomePlus in Houston, Texas.  He paid $699.88.  As an authorized retailer of the Samsung Washing Machines, Conn's acted as Samsung's agent in selling Ross his Washing Machine.

77.    Ross used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.  Ross purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

78.    Upon learning that his Washing Machine is prone to exploding and causing injury and property damage, Ross ceased using the Washing Machine in the way he had used it previously.  He now takes his laundry to a commercial laundromat rather than using the numerous cycles on the Washing Machine he paid for.

79.    The so-called "repair" offered by Samsung under the recall is insufficient:  rather than restoring his Washing Machine's functionality while preventing it from self-destructing and causing injury, the "repair" eliminates important parts of his Washing Machine's functionality while having an uncertain effect on its likelihood of exploding and harming people or property.

80.    Had he known about the defects, Ross would not have purchased the Washing Machine.

### 9.    Rhoda Tortorici

81.    Plaintiff Rhoda Tortorici is a resident of Newbury Park, California.

82.    Tortorici purchased a Samsung Washing Machine (Model Number WA48J7700AW/A2; Serial Number 0E6E5AEH101819B) in May 2016 from Pacific Sales in

-17-

Newbury Park, California.  She paid $599.99.  As an authorized retailer of the Samsung Washing

Machines, Pacific Sales acted as Samsung's agent in selling Tortorici her Washing Machine.

83.     Tortorici used the above-referenced Washing Machine solely for its intended

purpose as a personal home appliance.  Tortorici purchased the Washing Machine new, and it

was in pristine condition without perceivable damage or defect.

84.     Upon learning that her Washing Machine is prone to exploding and causing injury

and property damage, Tortorici ceased using the Washing Machine in the way she had used it

previously.  The uncontrollable vibrations that frequently caused her Washing Machine to move

around the floor became a cause for significant alarm, given the safety risks recently disclosed by

Samsung.

85.     The multiple preset functions advertised by Samsung as included on the Washing

Machine were a major factor in Tortorici's decision to purchase this specific model, which was

purportedly designed to handle bedding and bulky items.  Because of the defect, she is no longer

able to use the Washing Machine cycles and features she specifically sought out and paid to have

included on her Washing Machine.

86.     The rebate and/or so-called "repair" offered by Samsung through the recall are

insufficient either to make Tortorici's machine safe while preserving the Washing Machine

cycles and functions she paid for, or to make her whole for her loss.

87.     Had she known about the defects, Tortorici would not have purchased the

Washing Machine.

### 10.     William Losey

88.     Plaintiff William Losey is a resident of Fruita, Colorado.

89.     Losey purchased a Samsung Washing Machine (Model Number

WA422PRHDWR-AA 01; Serial Number YOIY5AED309600Z) in September 2013 from Sears

1328245.11

in Grand Junction, Colorado.  He paid $629.99.  As an authorized retailer of the Samsung

Washing Machines, Sears acted as Samsung's agent in selling Losey his Washing Machine.

90.    Losey used the above-referenced Washing Machine solely for its intended

purpose as a personal home appliance.  Losey purchased the Washing Machine new, and it was

in pristine condition without perceivable damage or defect.

91.    Losey specifically purchased his Washing Machine because of Samsung's

representations about its larger capacity and high-speed spin cycle.  Both were important to

Losey's purchasing decision:  the high capacity reduces the number of wash loads, reducing

water usage and laundry time, while the high-speed spin results in shorter dry cycles, therefore

saving money.

92.    Upon learning that his Washing Machine is prone to exploding and causing injury

and property damage, Losey ceased using the Washing Machine in the way he had used it

previously.  He was so concerned about the risk to safety that he warned other members of his

retirement community about the dangers belatedly acknowledged by Samsung to be posed by the

Washing Machine.

93.    Losey fears for his personal safety because of the dangers posed by the Washing

Machine if used as originally directed.

94.    Losey never received any notice of the recall from Samsung—despite having

previously followed Samsung's instructions and registered his Washing Machine through

Samsung's website immediately after purchase.  He learned about the recall only when a friend

saw it on TV and told Losey about it.

95.    Neither option that Losey has been offered under the recall is adequate.

Samsung's so-called "repair" will continue to deprive him of the use of the specific Washing

Machine features that caused him to purchase that Samsung model, while not necessarily eliminating the safety risk, while the rebate is inadequate to make him whole for the money he has lost due to the Washing Machine's failure to perform as Samsung represented that it would.

96.    Had he known about the defects, Losey would not have purchased the Washing Machine.

### 11.    Theresa Dzurenda

97.    Plaintiff Theresa Dzurenda is a resident of Baldwin, Pennsylvania.

98.    Dzurenda purchased a Samsung Washing Machine (Model Number WA484DSHAWR/A1; Serial Number Y4A653BCA00393K) in January 2013 from H.H. Gregg appliance store in West Mifflin, Pennsylvania.  As an authorized retailer of the Samsung Washing Machines, H.H. Gregg acted as Samsung's agent in selling Dzurenda her Washing Machine.

99.    Dzurenda used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.  Dzurenda purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

100.    Dzurenda purchased the five-year extended service plan offered by Warrantech, a third-party warranty provider.

101.    Within approximately a year-and-a-half of purchasing the Washing Machine, Dzurenda discovered that metal areas near the bleach fill dispenser were extremely corroded with rust.  She contacted Samsung about the problem, but Samsung refused to offer any relief.

102.    In August 2016, Dzurenda's brother-in-law was visiting and noticed the problem. He called Samsung, which admitted there was some problem with the Washing Machine. Samsung agreed to replace the top of the machine, but not the door itself.  Samsung sent poorly trained technicians to Dzurenda's house twice, but they were unable to perform the repair.

Samsung next flew a third technician from California—*to her home in the Pittsburgh area*—to service her Washing Machine. Dzurenda was forced to pay this man $233 to get the top mounted back on the machine, despite the five-year warranty.

103. The fourth technician sent by Samsung informed Dzurenda that her Washing Machine suffered problems because a rod holding the tub in place had deteriorated. He eventually returned, bringing a fifth technician to inspect the machine.

104. Samsung paid nothing to Dzurenda. The Warrantech five-year warranty plan, meanwhile, paid $218 including reimbursing her for some of her out-of-pocket Laundromat expenses incurred when she could not use the Washing Machine.

105. In recent weeks, Dzurenda learned about the safety risk posed by Samsung's exploding Washing Machines and called Samsung. The woman she spoke with by phone confirmed that Dzurenda's Washing Machine was affected by the explosion risk and said Samsung would contact her by phone. On November 28, 2016, Dzurenda received Washing Machine label stickers from Samsung by mail, despite the fact that she had not requested them nor chosen an option under the recall.

106. Upon learning that her Washing Machine is prone to exploding and causing injury and property damage, Dzurenda ceased using the Washing Machine in the way she had used it previously. Based upon Samsung's warnings, she is afraid to use it on higher-speed settings.

107. Should Samsung offer her a rebate in line with what others have received, it will be inadequate to make her whole for the money she has lost due to the Washing Machine's failure to perform as Samsung represented that it would.

108. Had she known of the defects, Dzurenda would not have purchased the Washing Machine.

1328245.11

### 12.    **Andres Linsey-Bell**

109.    Plaintiff Andres Linsey-Bell is a resident of Delaware, Ohio.

110.    Linsey-Bell purchased a Samsung Washing Machine (Model Number WA5451ANW/XAA; Serial Number Y0IX53BC601904Y) in August 2012 from Lowe's appliance store in Columbus, Ohio.  She paid $854.14.  As an authorized retailer of the Samsung Washing Machines, Lowe's acted as Samsung's agent in selling Linsey-Bell her Washing Machine.

111.    Linsey-Bell used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.  Linsey-Bell purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

112.    Linsey-Bell purchased an extended warranty through Lowe's at the time she purchased the Washing Machine.

113.    In the years she has owned the Washing Machine, Linsey-Bell experienced repeated problems with her Washing Machine becoming unbalanced.  Initially only heavier items would trigger the unbalanced error, but eventually the machine displayed the error during approximately every other load of laundry.

114.    In July 2016, Linsey-Bell had Washing Machine parts—including dampers—replaced through her Lowe's extended warranty in order to help stabilize the drum.  Soon the machine started to again experience frequent unbalanced load problems.  On October 4, 2016, Lowes sent a service technician to Linsey-Bell's home, but he did not repair her Washing Machine because he did not know what was wrong with it.

115.    Not long afterward, Linsey-Bell called Samsung and found out that her machine was affected by the product advisory predating the recall.  Samsung told her to wash all laundry on delicate, but she was still having the same problems with unbalanced loads.

116.    On or about October 10, 2016, after Lowe's declined to service her affected machine, Linsey-Bell called Samsung and was redirected to a call center, which referred her to a service center.  After informing the call center operator about her problem and leaving her contact information, she received a call from an apparent Samsung employee named Randy.  He said that because her machine was out of the one-year warranty, Linsey-Bell would have to pay for parts and service.  During this call, Randy was rude and implied that there were not widespread issues with the Washing Machines.

117.    After Linsey-Bell requested to speak to a manger, Randy eventually relented and said Samsung would pay for parts but not service.  Linsey-Bell refused.  She asked Samsung to provide a letter assuring her that she was in no danger.  Randy then offered to pay for parts *and* service but would not write a letter ensuring that she was in no danger.

118.    On October 13, 2016, Samsung sent a repairman through Service Quick who replaced the dampers in Linsey-Bell's Washing Machine.

119.    Linsey-Bell called the U.S. Consumer Products Safety Commission and informed them of her experiences with Samsung.

120.    She quit using her Washing Machine altogether due to the danger it posed to her and her family, and its inability to be used safely and as warranted and represented.  Linsey-Bell replaced her Washing Machine but did not accept Samsung's offer, which would not fairly compensate her for her economic losses and hardship as a result of Samsung's defective Washing Machine.

121.    Had she known of the defects, Linsey-Bell would not have purchased the Washing Machine.

### 13.   **Thomas & Sylvia DeLuca**

122.    Plaintiffs Thomas and Sylvia DeLuca (the "DeLucas") are residents of Amesbury, Massachusetts.

123.    The DeLucas purchased a Samsung Washing Machine (Model Number WA48H7400AW/A2; Serial Number 0BHH5AUX200260V) in March 2015 from Lowe's appliance store in Seabrook, New Hampshire.  They paid approximately $512.  In October 2015, the DeLucas purchased a second Samsung Washing Machine (Model Number WA40J3000AW/A2; Serial Number 0DLC5AUG13567A) for their daughter from the same Lowe's, paying approximately $483.

124.    The DeLucas and their family members used the above referenced Washing Machines solely for their intended purpose as personal home appliances.  The DeLucas purchased the Washing Machines new, and they were in pristine condition without perceivable damage or defect.

125.    The DeLucas' Washing Machines make loud noises and shake during normal operation.

126.    Since learning that the Washing Machines pose a danger to their family, the DeLucas no longer feel safe operating the Washing Machines, and they have ceased using the Washing Machines in the way they had used them previously.  The DeLucas' daughter and granddaughter, who used to reside with the DeLucas, have relocated out of fear and concern for their safety around the Washing Machines.

127.    The DeLucas recently contacted Samsung to inquire about their options under the Recall, but Samsung offered them only $200 total toward the purchase of new washing machines, which the DeLucas believe is unfair.

128.    The DeLucas would not have purchased the Washing Machines had they known of the defects.

### 14.    Daniel Robinson

129.    Plaintiff Daniel Robinson is a resident of Potomac, Maryland.

130.    Robinson purchased a Samsung Washing Machine (Model Number WA48J7700AW/A2; Serial Number 0E6E5AEG400353K) on June 10, 2015, from H.H. Gregg in Rockville, Maryland.  As an authorized retailer of the Samsung Washing Machines, H.H. Gregg acted as Samsung's agent in selling Robinson his Washing Machine.

131.    Robinson used the above-referenced Washing Machine solely for its intended purpose as a personal home appliance.  Robinson purchased the Washing Machine new, and it was in pristine condition without perceivable damage or defect.

132.    Upon learning that his Washing Machine is prone to exploding and causing injury and property damage—as is a Washing Machine owned by his 96-year-old mother—Robinson ceased using the Washing Machine in the way he had used it previously.

133.    Robinson participated in the Samsung recall, opting for a "repair" of both machines.  Upon receiving the Samsung-supplied warning label and control cover to affix to his Washing Machines, however, Robinson determined that the recall itself is misleading at best and neither makes consumers safe nor makes them whole for their losses due to the Washing Machines.

134.    The "reinforcement" repair offered by Samsung does not restore the Washing Machine to the original range of functions represented and warranted by Samsung, while the warning label and control cover sent by Samsung that are required for safety reasons do not necessarily make the machine safe nor do they restore the Washing Machine's missing functionality.

1328245.11

135.    Had he known of the defects, Robinson would not have purchased the Washing Machine.

**B.    Defendants**

1.    **Samsung Electronics Co., Ltd.**

136.    Defendant Samsung Electronics Co., Ltd. is a South Korean multinational corporation located in Seoul, South Korea.  It designs, manufactures, and distributes the Washing Machines for sale in New Jersey and throughout the United States.  According to its 2014 Annual Report, Samsung Electronics Co., Ltd. has two "Regional Headquarters" in the United States:  one in Ridgefield Park, New Jersey, and another in San Jose, California.  Samsung Electronics Co., Ltd. also regularly monitors its wholly-owned subsidiaries' financial risk arising from operating activities and regularly dispatches financial risk managers to its regional headquarters in the United States.

137.    At all times relevant hereto, Samsung Electronics Co., Ltd. was in the business of distributing, marketing, promoting, and selling the Washing Machines in New Jersey and throughout the United States.  Samsung Electronics Co., Ltd. purposely directs its conduct toward this District and engages in a continuous course of business in this District, both by intentionally locating its wholly owned subsidiary in this District and by selling many thousands of washing machines and other consumer goods in New Jersey every year.

138.    Samsung Electronics Co., Ltd. has intentionally and purposely availed itself of the laws of New Jersey by incorporating a New Jersey choice of law provision and Bergen County, New Jersey, forum selection clause into its online terms of service.

2.    **Samsung Electronics America, Inc.**

139.    Defendant Samsung Electronics America, Inc. is a wholly-owned subsidiary of Samsung Electronics Co., Ltd., incorporated in New York, with its headquarters in Ridgefield

Park, New Jersey. Samsung Electronics America, Inc. is the warrantor of the products designed, manufactured, and distributed by Samsung Electronics Co., Ltd., and it acts as Samsung Electronics Co., Ltd.'s agent in the processing of warranty claims related to defects in the manufacturing or materials used by Samsung Electronics Co., Ltd. during the manufacturing process.

140.    At all relevant times, Samsung Electronics America, Inc. was in the business of distributing, marketing, promoting, and selling Washing Machines in New Jersey and throughout the United States. Samsung Electronics America, Inc. resides in and engages in a continuous course of business in New Jersey, and it sells many thousands of washing machines and other consumer goods in this District every year.

141.    Samsung is in the business of manufacturing, producing, distributing, and selling Washing Machines in New Jersey and throughout the United States, both directly and through its network of authorized dealers.

## JURISDICTION AND VENUE

142.    The United States District Court for the District of New Jersey has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and at least one member of the class is a citizen of a state different from at least one of the Defendants. For example, Plaintiff Michelle Soto Fielder is a Texas citizen and Samsung Electronics America, Inc. is a resident of New York and New Jersey and Samsung Electronics Co. Ltd. is a citizen of a foreign state.

143.    The United States District Court for the District of New Jersey has jurisdiction over Defendants because they reside and/or transact business in New Jersey, have purposely availed themselves of the laws of New Jersey, and because many of the specific events giving rise to this action occurred in New Jersey.

144.    Venue is appropriate in the United States District Court for the District of New

Jersey because Samsung Electronics Co., Ltd.'s principal place of business is in Ridgefield Park,

New Jersey, meaning it resides in this District.  28 U.S.C. § 1391(b) and (c).

## BACKGROUND

### A.    The Washing Machines

145.    The Washing Machines at issue in this action all have high-speed motors that spin

the washer tub at speeds of approximately 1100 revolutions per minute—over 18 revolutions per

second—and certain defective assembly dampers.

146.    The Washing Machines are the approximately 2.8 million top-loading washing

machines that Samsung admits can blow themselves apart.  The relevant model numbers are:

WA40J3000AW/A2, WA45H7000AP/A2, WA45H7000AW/A2, WA45H7200AW/A2,

WA45K7600AW/A2, WA45K7100AW/A2, WA48H7400AW/A2, WA48J7700AW/A2,

WA48J7770AP/A2, WA48J7770AW/A2, WA50K8600AV/A2, WA50K8600AW/A2,

WA52J8700AP/A2, WA52J8700AW/A2, WA400PJHDWR/AA, WA422PRHDWR/AA,

WA456DRHDSU/AA, WA456DRHDWR/AA, WA476DSHASU/A1, WA476DSHAWR/A1,

WA484DSHASU/A1, WA484DSHAWR/A1, WA48H7400AP/A2, WA50F9A6DSW/A2,

WA50F9A7DSP/A2, WA50F9A7DSW/A2, WA50F9A8DSP/A2, WA50F9A8DSW/A2,

WA52J8060AW/A2, WA5451ANW/XAA, WA5471ABP/XAA, WA5471ABW/XAA,

WA56H9000AP/A2, WA56H9000AW/A2.[1]

147.    The Washing Machines range in price from approximately $549 to $1499.

---

[1] Samsung states on its website that only certain serial numbers of these Washing Machines have
the problem at issue in this lawsuit.  Plaintiffs intend to obtain that list of serial numbers from
Samsung during discovery and ascertain from Samsung why it believes that washers with other
serial numbers do not blow themselves apart.

B.    **The Defects**

148.    As explained above, this case involves Washing Machines that actually explode. When the Washing Machines explode, they do so with such force that they are irreparably damaged.  Indeed, the force of the explosion is capable of seriously injuring people and damaging property, rendering the Washing Machines unsafe for ordinary use.

149.    The Washing Machines are prone to explode during the spin cycle—operating at 18 revolutions per second—when loads cause the Washing Machine tub to vibrate dramatically. That vibration causes the assembly dampers (a metal rod and spring) that hold the washer tub in place to become unfastened, which results in a centrifugal explosion that destroys the machine and nearby property.  There are at least four specific design defects with the Washing Machines (the "Defects"):

a.    The assembly dampers are defective because they are insufficient to keep the tub in place and become unfastened during the spin cycle.

b.    The motor is defective because it is too powerful for the Washing Machines; i.e., the materials selected for other parts within the machines are not strong enough to withstand the extreme forces generated by the washing motor part.

c.    The unbalanced load warning mechanism is defective because it fails to detect the unbalanced load and stop the spin cycle before the explosion occurs.

d.    The Washing Machines' exterior cabinet is defective insofar as the top of the washer explodes from its base under normal operation.

150.    The Defects are design defects:  all existed at the point of manufacture and sale. Proposed class members could not reasonably discover the Defects because consumers cannot inspect the interior contents of the Washing Machines at the point of sale to determine if the materials of the machines, design of the machines, or manufacturing process related to the

machines are non-defective.  The symptoms of the Defects thus manifest only after the point of sale, and sometimes outside of the warranty period unilaterally imposed by Samsung.

### C.    The Warranties

#### 1.    Express Warranties

151.    Samsung provided a uniform, express one-year factory warranty against manufacturing defects and materials and workmanship.  The warranty further protects against defects in the wash tubs for three years, and defects in the motors for 10 years.

152.    The warranty for the Washing Machines is offered on a take-it-or-leave-it basis, and consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power.

153.    Although the warranties protect the Washing Machines for many years related to the allegedly defective parts at issue (including the washing motor part), it appears that Samsung routinely denies warranty claims based upon the Defects alleged herein.

#### 2.    Implied Warranties

154.    In addition to the express warranty described above, Samsung marketed, advertised, and warranted that the Washing Machines were of merchantable quality and fit for their intended purpose.  It further marketed, advertised, and warranted that the Washing Machines were free from defects and did not pose an unreasonable risk to persons or property.

155.    Federal law mandates that any manufacturer or seller making a product available to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.  Accordingly, such implied warranties apply to Washing Machines sold to Plaintiffs and all proposed class members.

### 3. Limitations on Express and Implied Warranties

156.    The limitations in the warranties offered by Samsung on the Washing Machines, including the limitations on implied warranties and the terms of the warranty, are unconscionable and unenforceable because, among other things, Samsung knew or should have known that the Washing Machines were defective and not fit for ordinary use.  Plaintiffs will prove that the warranties' limitations are unconscionable by way of proof obtained during the discovery period in this case, including, for example, proof that Samsung knew or should have known of the Defects at or prior to the point of sale.

### D. Samsung's Knowledge of the Defects

157.    Samsung knew that the Washing Machines it marketed and sold were prone to explosion, that exploding Washing Machines exposed both person and property to an unreasonable risk of harm, and, therefore, that the Washing Machines were inherently defective, unmerchantable, and unfit for their intended use.  Samsung received complaints about the Washing Machines as early as 2011 relating to problems with their spin cycles, high vibrations, breaking springs, and even explosions.

158.    Samsung has known that the exploding Washing Machines cause actual physical injury to consumers since no later than approximately October 24, 2013, when a woman in California was physically injured by a Samsung Washing Machine explosion, leading Samsung to inspect her Washing Machine (model number WA50F9A6DSW/A2) on November 22, 2013.

159.    Since October 30, 2015, Samsung has been on notice of class action litigation alleging that its Washing Machines were defective and unreasonably dangerous due to the risk of explosion.

160.    In spite of all this knowledge, Samsung continued selling the defective and unreasonably dangerous Washing Machines without (a) warning consumers of the real

1328245.11

possibility of explosion and injury to people and property; (b) recalling the defective Washing Machines; (c) offering to repair the defective Washing Machines free of charge; and/or (d) refunding consumers any or all of the purchase price they paid for their Washing Machines.  It was not until November 4, 2016—after Plaintiffs filed the instant lawsuit, which appears to have triggered the CPSC investigation into the Washing Machines—that Samsung admitted that its Washing Machines were defective as sold and thus issued a limited recall of the Washing Machines.

**E.    Samsung's Misrepresentations and Concealment**

161.    Notwithstanding Samsung's knowledge of the Defects and the injuries they have caused, Samsung chose to continue manufacturing and selling millions of dangerous and defective Washing Machines to consumers without warning consumers of the serious safety risks its products posed, changing the design of its unsafe product, or using appropriate materials.

**1.    Affirmative Misrepresentations**

162.    Samsung touted the Washing Machines' Digital Inverter Motor, which allowed the Washing Machines' drums to spin at high speeds with "the power to handle anything!" and specifically represented that the Washing Machines were designed to clean bulky garments and bedding.  In particular, Samsung broadly represented to its customers that:

a.    "This Samsung washer performs smoothly at top spin speeds, minimizing noise and vibration";

b.    its Washing Machines have "[t]he power to handle anything!" because the "beltless direct-drive motor generates a higher spin speed of 1,100 rpm for more effective, quiet operation";

c.    "The washer also has fewer moving parts, meaning fewer repairs";

d.    "Even bulky garments and blankets get super clean";

e.    "The tempered glass lid is durable. . . ."; and

f.    The washer has a special setting designed to handle bedding and other bulky loads.

163.    Samsung represented that the Washing Machines included an "unbalanced load" warning that would stop the tub from spinning in the event of excessive tub vibrations that can lead to rocking, movement, or other dangerous situations.

164.    In purchasing and using the machines, Plaintiffs implicitly and expressly relied on all of these representations, which were included in Samsung Washing Machine users' manuals. They were also made on Samsung's marketing and advertising materials, including Samsung's website, promotional and marketing information provided to retailers containing information for end-users, and Samsung-branded point-of-sale displays, stickers, and printed materials in stores beginning in or around 2012 and continuing in substance throughout the period the Washing Machines were sold.

## 2.    **Concealment**

165.    Samsung had a duty to disclose the above described Defects to Plaintiffs and proposed class members, but failed to do so.

166.    Samsung sold the Washing Machines to Plaintiffs and the proposed class members and made the warranties and express representations described above with knowledge that the Washing Machines were defective.  Specifically, Samsung knew that that the Washing Machines—whose tubs spin at a rate of 18 times per second—were prone to explode during the spin cycle when loads, particularly those containing bulky items, would cause the tub to vibrate dramatically, causing assembly dampers that hold the washer tub in place to become unfastened, resulting in a dramatic centrifugal explosion that destroys the machine and nearby property.

1328245.11

167.     These Defects were not disclosed to Plaintiffs, or other proposed class members at the point of sale when they purchased their respective Washing Machines, nor has Samsung disclosed them to proposed class members since the time of purchase.  Instead, Samsung has taken steps to prevent proposed class members from learning of the Defects.

168.     Upon information and belief, Samsung monitors the internet and social media web sites such as Facebook for news about Washing Machine explosions.  When consumers post publicly about their experiences with an exploding Washing Machine, Samsung affirmatively contacts them and attempts to resolve their claims.

169.     Since at least January 2016, and upon information and belief before that date, Samsung, while never publicly acknowledging the existence of the Defects, has moved aggressively to collect and destroy all evidence of the defective machines after they have actually exploded in proposed class members' homes.  Samsung has compensated some proposed class members in exchange for what may arguably constitute litigation releases that it extracted from them without informing them of the pendency of this action and other class action litigation in which they were putative plaintiffs.

170.     Samsung knowingly permitted the destruction of at least one exploded Washing Machine—which is evidence in this litigation.  This occurred on or around the second week of January 2016, while it was actively defending itself in class action litigation alleging that Samsung washing machines were prone to explode due to an undisclosed design defect.

**F.     <u>Injuries and Risk of Imminent Harm to Plaintiffs</u>**

171.     Plaintiffs and the other proposed class members purchased their Washing Machines solely for their personal, residential purposes and only used the Washing Machines as intended and in accordance with the material operating instructions provided by Samsung.

172.    In light of the Defects, Plaintiffs and other proposed class members paid far more than the reasonable value of the Washing Machines, and they would not have paid such had the Defects described above been disclosed by Samsung.

173.    Samsung has profited, and continues to profit from the sale of defective Washing Machines by failing to disclose the above described Defects and continuing to sell the Washing Machines at prices well above their reasonable value.

174.    As a direct and proximate result of Samsung's false warranties, misrepresentations, and failure to disclose the Defects inherent in these Washing Machines, Plaintiffs and the proposed Class have purchased the Washing Machines and have suffered injury as a result.

175.    As a direct and proximate result of Samsung's concealment of the Defects, its failure to warn its customers of the Defects and the safety risks posed by the Washing Machines, and its failure to remove the defective Washing Machines from consumers' homes or otherwise remedy the Defects, Plaintiffs and proposed class members purchased Samsung's defective and unsafe Washing Machines and in many cases use them in their homes to this day.  Had Plaintiffs and proposed class members known of this serious safety risk, they would not have purchased the Washing Machines, would have paid substantially less for their Washing Machines than they paid, or would have removed them from their homes before they exploded.

176.    Samsung continues to allow consumers to keep and use the Washing Machines in question without fully disclosing the inherent Defects described above despite receiving numerous consumer complaints.  Below are some examples of complaints made by purchasers of the Washing Machines on SaferProducts.gov, a website sponsored by the Consumer Product Safety Commission:

1328245.11

a.      I am a safety health and environmental professional who has responded to a variety of industrial accidents/investigations.  Recently I received an industrial level accident with my very new top load Washing Machine.  It's a Samsung and the largest one on the market. It destroyed itself so violently that all technicians, safety professionals, engineers, and layman are completely impressed with the level of carnage.  Apparently it was doing a partial load and spinning at high speeds when it broke free, throwing itself against walls and throwing parts and water everywhere.  Had someone been nearby they could have been severely injured.  (Report date:  July 16, 2015; Model No.:  WA56H9000AP/A2; Photograph Below)



b.      We have a one year old Samsung top loading washing with a 5.0 cubic foot capacity.  We began a load of laundry before going to bed.  As the Washing Machine entered the spin cycle, the entire machine exploded and burst into pieces.  The entire top of the unit separated and flew into our hallway, and the unit continued to spin violently around the laundry room, ripping holes in our walls, dryer, cabinets, flooring, etc. . . .  If we had been in the room or even in our hallway at the time of the explosion, it is very likely that we would have been seriously injured or killed.  (Report date:  August 27, 2015.)

c.      On Monday, October 5th[, 2015] at approximately 8:15 p.m., I heard a violent sounding commotion coming from our laundry room.  I yelled for my husband and ran to the room to find my brand new, two month old Samsung Active Wash Washing Machine lying

on its side, the lid completely blown off, the sides of the machine expanded outward, the internal

drums now thrown behind the machine on the floor, the machine itself thrown across the room,

and shards of metal and plastic lying everywhere, in addition to my floor being covered in

water… the garage door across from the washer is metal and has multiple dents in it from the

force of the metal and plastic shards exploding outward.  (Report date:  October 11, 2015; Model

No.:  WA52J8700AP/A2; Photograph Below)



   d. . . . We heard a loud crash and the entire house shook violently.  We

rushed into the laundry room to find:

- the washer had jumped out from the wall several feet.

- the washer had spun 120 degree [sic] to the right the force of it exploding
  had caused it to unplug itself.

- the top of the washer had become completely dislodged from the base.

- the base metal sides were bent and distorted.

- the tub inside the machine had been dislodged, and is shattered.

- metal rods holding the tub in place had either broken or bent.

- electrical wires were hanging out from the back of the unity [sic], most of
  them severed.

- metal and plastic parts were strewn about the room.

Outside of the machine damage, the washer left a deep gouge in our dryer, scratched the tile

flooring, and also slammed into our laundry sink, dislodging it from the wall, making a hole in

the drywall. . . .  (Report date November 16, 2015; Model No.:  WA50F9A7DSW/A2;

Photographs Below)





      e.    . . . The entire top of the unit separated and flew across the room

exploding that [sic] glass across the laundry room and into our hallway, and the explosion put

holes in the wall, damaged shelves, etc.  If my wife or son were in the room when this happened,

I have no doubt that they would be in the hospital or possibly even killed.  (Report date:

November 18, 2015; Model No.:  WA50F9A6DSW/A2; Photographs Below)





f.      We had a Samsung top load washing machine explode on 5/31/2015. . . .

[I]t was in the middle of a cycle and we heard a loud bang.  We came downstairs in our

unfinished basement to find water everywhere and the washer looked as if it had actually

explained. It was on its side with the top off and the sides all dented and some small parts laying

around. The hoses and cords were still connected lucky [*sic*], otherwise we might have had

water damage and luckily we were home. (Report Date: November 23, 2015; Model No.:

WA50F9A8DSP/A2; Photographs Below)

 

177.    The complaints made to SaferProduct.gov, as detailed in the preceding paragraph,

are consistent with complaints and descriptions of the explosion events referenced at various

locations on the internet. Below are some examples of such complaints:

a.    I heard a loud commotion and it kind of sounded like one of the shelves

were falling down. . . . [The washer] was across the room on its side and there was water out on

the floor. . . . This part was on the floor, completely detached from it all, [and] pieces . . . were

sprung out on top of it on the side. . . . It crumbled like paper, , , , There are dents in my garage

doors . . . you can see where the pieces flew off and hit here and there are holes in the wall.

Where it hit the dryer, it cracked a hole in that. My daughter feeds [our dogs] twice a day in here

so that was kind of my big, [*sic*] any one of use could've been in here and it could've taken us

out.  (Sarah of North Carolina, October 29, 2015; story *available at*

http://abc11.com/news/consumers-claim-some-samsung-washing-machines-explode/1056429/.)

       b.     Boom! . . .  A giant explosion, I had no idea what happened.  The back [of

the washer] was facing you, it was tilted on the corner being held up by the water lines. . . .  The

whole top had already got [*sic*] thrown off form [*sic*] there and it was dangling from the back of

it and the glass, [*sic*] I guess when it twisted, the glass shot off and it exploded out of the way. I

have a 7-month-old-son, if he were crawling down there when it happened, he would've been cut

up.  (Jim of North Carolina, November 20, 2015; story *available at*

http://abc7ny.com/home/more-consumers-claim-samsung-washing-machines-explode/1093075/.)

       c.     . . . And we just heard this boom. It sounded like a cannon went off, louder

than a gun shot[*sic*]. . . .  I would have never in my life expected a washing machine to

explode. . . .  I have the child safety locks on all of my doors, and I'm diligent about checking car

seats, kids toys, everything.  This is not something I would have thought about looking into. . . .

[T]he hoses were the only thing holding [the washing machine] together and the water hoses

were spraying everywhere. . . .  [The washer] was totally sideways in the washing room.  (Becky

from Florida, January 11, 2016; story *available at*

http://www.news4jax.com/consumer/news4jax-investigates-exploding-washing-machine.)

       **G.**     **Samsung's "Voluntary" Consumer Product Safety Commission "Recall"**

178.    Plaintiffs filed the instant lawsuit in August 2016.  Within days, Good Morning

America contacted Plaintiffs' counsel regarding the allegations contained herein and continued

investigating reports of exploding Samsung Washing Machines.  Apparently as a result, the

CPSC began "actively and cooperatively working with Samsung to address safety issues related

to certain top-loading washing machines made between March 2011 and April 2016" and

"advising consumers to only use the delicate cycle when washing bedding, water-resistant and

bulky items" in order to "lessen[ ] the risk of impact injuries or property damage due to the washing machine becoming dislodged."  CPSC, "Statement from CPSC Regarding Top Loading Washing Machines Made By Samsung," *available at* https://www.cpsc.gov/Newsroom/Press-Statements/statement-from-cpsc-regarding-top-loading-washing-machines-made-by-Samsung. Around the same time, Good Morning America aired a nationally televised segment discussing the instant lawsuit and the CPSC statement.

179.    On November 4, 2016, Samsung issued what it termed a "recall" for approximately 2.8 million Washing Machines after admitting to the CPSC that it had received 733 reports of Washing Machines exploding and 9 related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries (the "Recall").  The Recall involves 34 model numbers.  The CPSC advised consumers to "contact Samsung immediately to receive one of the following remedy options."  CPSC, "Samsung Recalls Top-Load Washing Machines Due to Risk of Impact Injuries," *available at* https://www.cpsc.gov/Recalls/2017/Samsung-Recalls-Top-Load-Washing-Machines.

180.    The Recall is grossly inadequate—it is a recall in name only.  First, as explained in more detail below, the "repair" option does not *repair* the Washing Machine:  it *disables* it because the "repair" instructs consumers not to use certain wash cycles.  Second, the rebate option vastly undercompensates Plaintiffs and proposed class members.  Under the Recall, Plaintiffs and proposed class members are left with a completely inadequate remedy while Samsung continues to profit handsomely.

### 1.    <u>Samsung Announces the Recall</u>

181.    After refusing for years to acknowledge the Washing Machine defect and accompanying safety risk to consumers, Samsung on November 4, 2016 announced "a voluntary recall of certain top-load washers manufactured between March 2011 and current production

dates." *See* Samsung, "Voluntary Recall of Certain Top-Load Washers," *available at* https://pages.samsung.com/us/tlw/index.html; *see also* CPSC, "Samsung Recalls Top-Load Washing Machines Due to Risk of Impact Injuries," *available at* https://www.cpsc.gov/Recalls/2017/Samsung-Recalls-Top-Load-Washing-Machines.

182.    The "voluntary action," which was undertaken "in cooperation with the U.S. Consumer Product Safety Commission (CPSC)," was "driven by reports highlighting the risk that the drums in these washers may lose balance, triggering excessive vibrations, resulting in the top separating from the washer," Samsung said.  https://pages.samsung.com/us/tlw/index.html. "This can occur when a high-speed spin cycle is used for bedding, water-resistant or bulky items and presents an injury risk to consumers." *Id.*  According to Samsung, "NEW SAMSUNG TOP LOAD WASHERS CURRENTLY SOLD AT RETAILERS ARE NOT AFFECTED BY THIS RECALL." *Id.*

183.    Samsung assured its customers that they "will be offered two easy choices as part of the recall program":

- The first option is a free in-home repair that includes reinforcement of the washer's top.  Consumers who choose the in-home repair will receive a free one-year extension of the manufacturer's warranty, regardless of the age of their washer.

- The second option is a rebate that can be applied towards the purchase of a new washer from Samsung or other brand. Consumers who choose this option will also be reimbursed for any installation and removal fees charged by the retailer.  The rebate amount is based on the model and manufacture date of the recalled

washer.  Consumers who choose a Samsung washer will receive an

additional loyalty incentive up to $150 toward their new Samsung

washer purchase.

*Id.*

184.    Finally, Samsung said that as "an added safety measure, all known washer owners

will also receive a Home Label Kit in the mail.  The kit will include a new control panel guide,

two warning labels and step-by-step instructions for applying them to the machine, and a user

manual supplement."  *Id.*

185.    On information and belief, Samsung has not adequately informed consumers

about the Recall.  For example, William Losey registered his Washing Machine purchase

through Samsung's website around the time he bought the washer in 2013, but Samsung did not

contact him about the recall.  Losey found out about it when a friend saw a story on the news and

told him about it.  It appears that this lack of communication is not isolated.  For example, one

Facebook user wrote about Samsung:  "They haven't even mentioned any stickers [part of the

recall] to me and I've spent countless hours on the phone with them."

### 2.    "Repair" Option

186.    The two-step "repair" option does not repair the Washing Machine:  it simply

battens down the hatches for an inevitable violent failure and instructs consumers not to use

some of the washing machine features that those consumers paid for.

### a.    Step 1:  Samsung sends a TV installer.

187.    For the first part of the "repair," Samsung sends a technician—often a TV

installer with little or no Washing Machine repair training—to bolt or otherwise fasten the top of

the machine to the body of the machine in an effort to prevent the top from separating from the

machine in the event the tub vibrates out of control sometime in the future.  In other words, the "repair" is designed merely to contain, not to prevent an explosion.

188.    Samsung provides no guarantees that these so-called "repairs" work, or that it is even repairing the right part.  While some Samsung technicians have stated that failing support rods are to blame for Washing Machine explosions, Samsung does not acknowledge this to customers who ask about this possibility on the Recall telephone line.  Another Samsung representative acknowledged that "what everybody is scared about is the high spin. . . ."

189.    Samsung provides a warranty on the "fix" for one year.  It does not provide customers an estimate as to the length of time the reinforcement will remain functional, nor does it provide an estimate of the cost of these parts or labor in the event the jury-rigged repair has to be repeated or updated someday at customers' expense, according to a proposed class member who has spoken with Samsung representatives at length.

190.    Samsung uses untrained, inexperienced technicians to implement its "repair," and many consumers report missed appointments and other scheduling errors.  The "repair" is carried out by third-party service technicians, including the widespread use of DISH satellite television repair technicians.  WFTV-TV, "DISH TV technicians fixing Samsung washing machines," http://www.wftv.com/news/local/dish-tv-technicians-fixing-samsung-washing-machines/469267691.  This has prompted customers to complain on Facebook that the visiting TV repair technician "didn't know how to take the lid off. . . .  I had to show him lol . . . and NO it did not fix anything."

191.    The DISH TV technicians themselves have communicated their inexperience and lack of adequate training to proposed class members.  For example, one DISH TV technician

sent to "repair" a Washing Machine in Maricopa, Arizona told a proposed class member that his only training in washing machine repair was watching a one-hour video.

192.    Instead of focusing on restoring full functionality to the Washing Machines—or even on making the machines safe for normal use—the DISH TV technicians hired by Samsung are focused on selling their own products to Washing Machine owners.  One DISH TV technician sent to repair a proposed class member's Washing Machine in Texas brought surround-sound speakers into the proposed class member's home, unprompted, and pressured her to buy them while the technician "repaired" the Washing Machine.

193.    A proposed class member in Chugiak, Alaska, meanwhile, reports that Samsung has informed her that it will not send technicians to "repair" affected Washing Machines in her State.

194.    But even "repaired" Washing Machines remain prone to explosion.  Samsung technicians "repaired" a proposed class member's Washing Machine in Rosenberg, Texas on December 3, 2016.  The Washing Machine exploded anyway on December 28th, destroying the Washing Machine and damaging a nearby dryer, refrigerator, and wall.  Fortunately, the proposed class member's two minor daughters, who regularly do the laundry, were in another room when the explosion occurred.

195.    Samsung used deceptive tactics to try to take possession of the exploded Washing Machine against the proposed class member's will.  Samsung repeatedly asked to take possession of the proposed class member's Washing Machine, she repeatedly refused and explained that she would only allow the CPSC or her attorneys to take possession of the exploded "repaired" washer.  Nevertheless, Samsung sent third-parties to the proposed class member's home on approximately five occasions asking to take possession of the Washing

Machine in order to inspect it.  Each time, the proposed class member refused when the third-parties failed to identify who sent them.  Ultimately, the CPSC collected the exploded, "repaired" Washing Machine at the proposed class member's request.

196.    The pictures below depict the "repaired" washing machine following the explosion.





### b.    Step 2:  The "Home Label Kit."

197.    Because the first step of Samsung's so-called repair is inadequate, it must backstop it with a set of mandatory cycle-disabling control panel changes and warning labels. Samsung euphemistically refers to these as a "Home Label Kit" and characterizes them as an "added safety measure."  In reality, this substitute control panel label and warning sticker system is designed to:  (1) prevent users from washing bulky items on the high-speed spin cycle as the Washing Machines were specifically marketed, sold, and warranted to do; (2) warn all Washing Machine users about the serious safety risk posed by using the machines as originally marketed, sold, and intended by Samsung; and (3) attempt to insulate Samsung from further liability.

198.    Samsung never plainly tells customers that the "reinforcement" or "repair" *does not* restore the machine to its original specifications, and that the label kit application is *required* to attempt to prevent consumers from using certain cycles for safety reasons and warn consumers about the risk of harm.  By omitting these facts, Samsung encourages consumers who may not want to go through the expense and hassle of replacing their machines to accept the "repair"—a substantially less safe alternative than fully replacing the machine.

199.    The "Home Label Kit" consists of a new control panel label that simply redefines the BEDDING/WATERPROOF CYCLE making it identical or substantially similar to the DELICATES CYCLE.  In short, the new control panel removes a user's ability to initiate the high-speed spin cycle promoted and advertised by Samsung for use with bedding and other bulky items and replaces it with a *low-speed* spin cycle using the same or similar name.  It is designed as a low-cost way to reduce the Washing Machines' functionality, provided users follow the new label.

1328245.11

200.    In case users are tempted to turn the knob to the previous bedding cycle, Samsung includes prominent WARNING stickers explaining that bulky or water-resistant materials should only be washed on the "new BEDDING/WATERPROOF cycle."

201.    Finally, Samsung includes additional safety information in its "kit," all designed to warn Washing Machine users about the risk of "serious injury or damage to your home" if users fail to wash bulky or water-resistant materials on anything but the "new BEDDING/WATERPROOF cycle."

202.    Samsung's "Home Label Kit" is a dangerously flawed attempt to reduce costs and insulate Samsung from liability by placing the risk of a dangerous design defect on *consumers* rather than on *Samsung*, which is and always has been far better able to bear the risk and associated costs.





203.    Even if the pseudo-repair were sufficient to prevent Plaintiffs' and proposed class

members' Washing Machines from exploding and causing property damage or injury, the Home

Label kit amounts to an acknowledgment by Samsung that its Washing Machines do not—and

cannot—function as marketed, sold, and warranted.  The 1,100 revolution per minute spin cycle

that Samsung expressly marketed, and consumers specifically purchased, is no longer available

to them.

204.    Under the Recall's repair option, Samsung does not compensate customers, even

though those consumers suffer at least three distinct forms of monetary harm.  First, every

consumer paid for a Washing Machine with features that Samsung now tells them they cannot

use safely.  Second, a Washing Machine that cannot be used on all of its cycles has less value than one that can be.  Third, consumers incur additional expenses directly and proximately caused by the Washing Machines' failure to perform as warranted.  This includes the need to wash smaller loads, re-run loads that no longer can be run under the previous settings, increase dryer use because the Washing Machine is no longer highly efficient at removing water, and take some items to the cleaners as they can no longer be adequately cleaned at home.  Samsung fails to provide this compensation even though it expressly advertised these features to Plaintiffs and proposed class members in user manuals, advertising materials, and point-of-sale marketing materials.

### 3.    **Rebate Option**

205.    Samsung's rebate option compensates customers based upon a misleading, mysterious sliding scale that both fails to compensate them for their true economic.

206.    The rebate overstates the value of the recalled Washing Machines.  Samsung claims the rebates offered to customers are "based on the fair market value of your washer.  This is determined by the model and age of your washer."  Frequently Asked Question Q4, https://pages.samsung.com/us/tlw/index.html.  But the fair market value of the washing machines that consumers purchased—ones that pose a serious risk of explosion—was *zero* at the time of sale.  And the fair market value of hypothetical washing machines that function properly (to which Samsung presumably is referring when it uses the term "fair market value") is much higher than Samsung claims.

207.    Samsung appears to compensate customers based on a five-year depreciation schedule starting on the date of manufacture rather than the date the Washing Machine was first put in service.  This schedule is no less than triply mistaken:  (1) washing machines should be depreciated on an 10-year schedule; (2) consumers do not begin using Washing Machines until

months or years after the date of manufacture; (3) Samsung appears to base its depreciation schedule on the price for used washing machines, rather than amortizing the cost of the washing machine over its useful life.[2]  And those three serious, known errors lead to the reasonable inference that there are other problems with Samsung's depreciation schedule.

208.    Samsung's rebate compensation offers are universally and artificially low.  Some members of the proposed class report being offered as little as $24.  Even people who have owned their Washing Machine for less than a year state that Samsung is only offering them approximately half of the purchase price, even though what they purchased is worthless.

209.    Under the Recall's rebate option, Samsung also does not compensate customers for their additional utility and other expenses directly and proximately caused by the Washing Machines' failure to perform as warranted.

210.    Under the Recall's rebate option, Samsung also does not compensate customers for washer/dryer pairs that no longer match.  One proposed class member purchased such a pair in January 2016 for $1770.42 and quit using the Washing Machine as soon as he learned about the safety defect.  Samsung refused to let him exchange the pair for a matching pair.  He replaced both and has now spent $3695.42 total on washers and dryers in 2016.  Another customer bought a matching washer/dryer pair for approximately $1500.  He was offered $580 under the rebate program, and $674 if he purchased another Samsung product.

211.    While Samsung radically undercompensates customers, it does apparently offer to pay a "loyalty bonus" of up to $150 on top of the "fair market value" to customers who purchase a new Samsung brand Washing Machine.  But one proposed class member purchased a new

---

[2] Professor Timothy Bresnahan—former chair of the Stanford Economics Department—has testified to this 10-year lifecycle on behalf of Whirlpool Corporation.  Professor Christopher Knittel—economics professor at MIT—has testified to this as well, despite otherwise disagreeing with Professor Bresnahan's Whirlpool testimony.

Samsung washer in order to obtain the promised $150 "loyalty bonus." He then followed Samsung's published recall procedures to apply for his rebate and bonus. But when he received a check from Samsung four weeks later, the check did not include the promised $150. He called Samsung to complain, and a representative told him that they have forwarded several complaints like his to upper management.

212.    Samsung only publically offers to do the right thing for a tiny sliver of its customers: Samsung states that it will refund the purchase price for people who bought a recalled Washing Machine within 30 days of the Recall (assuming those people hear of Samsung's offer).

213.    There is one other group for whom Samsung will do the right thing: customers who take their stories to the media. Patrick and Kristen Sabastian were unaware that their Samsung top-loading Washing Machine had been recalled until it exploded violently in their Raleigh, North Carolina home while the Sabastians were bathing their 2-week-old daughter. Diane Wilson, "Recalled Washer Comes Apart in Raleigh Home," http://abc11.com/news/recalled-washer-comes-apart-in-raleigh-home/1652411/. When the Sabastians reached out to Samsung, the company "said we can give you a rebate for a portion of what you paid for the machine," but Patrick Sabastian thought that was "ridiculous." *Id.* "We don't want to be over dramatic here," he said, "but it did explode in our house. I don't think it's asking too much to at least give us the amount of money so we can get a new washer and dryer." *Id.* After the Sabastians told their story to a local television news station, however, Samsung changed its tune. "Samsung gave them a full refund of what they paid for the washer and dryer, and also reimbursed them for the sheets they were washing at the time of the incident. . . . Samsung also agreed to pay for any damages the incident may have caused to their home." *Id.*

4.      **Reaction to the Recall**

214.    Consumer reaction to the Recall has been extraordinarily negative, both due to the misleading communications surrounding the Recall, the inadequate nature of the relief afforded, and the ham-fisted way it has been implemented.

215.    Many of the hundreds of consumers who have contacted Plaintiffs' counsel and/or posted public comments are dissatisfied with the misleading "repair" that does not fix the machine.  As one customer said on Facebook, "I bought a washer with a bedding cycle for a reason I have 7 dogs, change my sheets every other day, wash their blankets regularly.  Now they want to put in 2 bolts and give me stickers and call it good?"

216.    Many others are dissatisfied with the low rebate offers that do not compensate them for their losses.

217.    Many others are dissatisfied with the lack of implementation by Samsung after acknowledging a dangerous safety situation.  Washing Machine owners widely report not being contacted by Samsung about the Recall, not being able to get through to Samsung about the Recall, being stuck on hold for hours, being disconnected in the middle of a long telephone call, having service appointments canceled without warning, having service appointments scheduled without warning, and having service appointments where technicians lacked needed skills or training.

218.    On November 16, 2016, NBC Chicago reported that one consumer said "he has been getting the run-around too, calling it 'a nightmare of a time throughout all aspects of "the process" of getting the machine repaired.'"  He said Samsung "'is no help and cannot give answers or solutions,' and that he 'was disconnected several times with no call back,' adding that he is 'at a total loss at this point.'"  NBC Chicago, "Frustrated Customers Weigh In on Massive

Washer Recall," *available at* http://www.nbcchicago.com/news/local/Frustrated-Customers-Weigh-In-on-Massive-Samsung-Washer-Recall-401575296.html#ixzz4RO0rdYcY.

219.    Another consumer told NBC Chicago that "her calls to Samsung for a fix fell on deaf ears. 'I can't tell you how many times I called and didn't get a response.  Then when I did? [I]t was like talking to nobody,'" the station reported.  *Id.*  A third woman described Samsung failing to show up for a repair appointment, followed by a two-hour wait to speak to someone using Samsung's toll-free number, followed by being placed on hold for almost five minutes before the call was disconnected by Samsung.  *Id.*

220.    As Samsung can see through its monitoring of exploding Washing Machine discussions on Facebook, customers are ignoring the so-called warning labels.  "I feel like, if I put a warning sticker on there, then I am accepting the fact that my machine can explode and I'm okay with that.  NOT..!!" one user wrote.  Another said, "Mine are sitting on my counter.  Not putting them on and helping out [Samsung's] liability."

## CLASS ALLEGATIONS

221.    Pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), Plaintiffs identified above bring this action on behalf of themselves and all other persons similarly situated.  In particular, they seek to represent a class of:

> All residents of the United States and its territories who purchased a new Washing Machine or otherwise acquired a Washing Machine, primarily for household use and not for resale.

In the alternative, Plaintiffs propose multiple classes of:

> All residents of [a given state or states] who purchased a new Washing Machine or otherwise acquired a Washing Machine, primarily for household use and not for resale.

Excluded from both of the above definitions are:  Samsung, its officers, directors, and employees, any entity in which Samsung has a controlling interest or which has a controlling

interest in Samsung, and that entity's officers, directors, and employees; the judge assigned to this case and his or her immediate family; all expert witnesses in this case; and, all persons who make a timely election to be excluded from the class.

### A.    Plaintiffs meet the prerequisites of Rule 23(a)

222.    <u>Numerosity</u>.  According to the CPSC, the proposed national class includes approximately 2.8 million people.  Each of the state-specific classes thus includes no less than many thousands of individuals.  The proposed classes are thus so numerous that joinder of all members would be impracticable.

223.    <u>Commonality.</u>  The answers to questions common to the class will drive the resolution of this litigation.  Specifically, resolution of this case will be driven by questions relating to the Washing Machines' common design, whether the design is defective, whether the defective design poses a safety risk, Samsung's knowledge of the Defects, the adequacy of Samsung's purported repair, and the "true" market price of the Washing Machines at purchase. The common questions of law and fact include:

a.    whether the Washing Machines pose unreasonable safety risks to consumers;

b.    whether Samsung knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.    whether Samsung concealed the safety risks its Washing Machines pose to consumers;

d.    whether the safety risks the Washing Machines pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a washing machine;

e.    whether the Washing Machines possess material Defects;

f.    whether Samsung knew or should have known of the inherent Defects in the Washing Machines when it placed them into the stream of commerce;

g.    whether Samsung concealed the Defects from consumers;

h.    whether the existence of the Defects are material facts reasonable purchasers would have considered in deciding whether to purchase a Washing Machine;

i.    whether the Washing Machines are merchantable;

j.    whether the Washing Machines are fit for their intended use;

k.    whether Samsung was unjustly enriched by the sale of defective Washing Machines to the Plaintiff class;

l.    whether any false warranties, misrepresentations, and material omissions by Samsung concerning its defective Washing Machines caused proposed class members' injuries; and

m.    whether Samsung should be enjoined from further sales of the Washing Machines.

224.    Typicality.  Plaintiffs have the same interests as all members of the classes they seek to represent, and all of Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the classes.  Plaintiffs and all proposed class members own or owned a Washing Machine designed or manufactured by Samsung with uniform Defects that make the Washing Machines immediately dangerous upon first use and that cause the Washing Machines to fail within their expected useful lives.  All of the claims of Plaintiffs and proposed class members arise out of Samsung's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and from Samsung's failure to disclose the known safety risks and Defects.  Also common to Plaintiffs' and proposed class members' claims are

Samsung's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Washing Machines, Samsung's conduct in concealing the Defects in the Washing Machines, and Plaintiffs' and proposed class members' purchase of the defective Washing Machines.

225.    Adequacy.  Plaintiffs will fairly and adequately represent and protect the interest of the proposed class members:  Plaintiffs' interests align with those of the class members, and Plaintiffs have no fundamental conflicts with the class.  Plaintiffs have retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the class.

**B.    Plaintiffs meet the prerequisites of Rule 23(b)(2)**

226.    Samsung has acted and refused to act on grounds that apply generally to the class, so declaratory relief is appropriate with respect to the entire class.  Samsung made representations and warranties to the class as a whole, Samsung concealed facts from and made material misrepresentations to the class as a whole, and Samsung has destroyed and may still be destroying evidence relevant to the allegations of the class.

**C.    Plaintiffs meet the prerequisites of Rule 23(b)(3)**

227.    Predominance and Superiority.  The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the class, and a class action is superior to other methods, including the Recall, for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.  Samsung has acted in a uniform manner with respect to the Plaintiffs and proposed class members.

228.    Samsung is a sophisticated party with substantial resources, while proposed class members are not, and prosecution of this litigation is likely to be expensive.  Because the economic damages suffered by any individual class member may be relatively modest compared

to the expense and burden of individual litigation, it would be impracticable for proposed class members to seek redress individually for Samsung's wrongful conduct as alleged herein.

229.    The concealed safety risks described above counsel in favor of swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

230.    Plaintiffs and proposed class members have all suffered and will continue to suffer harm and damages as a result of Samsung's unlawful and wrongful conduct.  Absent a class action, class members will continue to suffer the undisclosed and/or concealed risk of explosion and incur monetary damages, and Samsung's misconduct will continue without remedy.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

231.    There will be no undue difficulty in the management of this litigation as a class action.

232.    Alternatively, certification may be appropriate as to individual issues of liability as against Samsung as those issues will raise common questions applicable to all proposed class members and materially advance the litigation.

**D.    The proposed class is ascertainable.**

233.    The class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the class.  The class consists of purchasers and owners of certain Washing Machines, and class membership can be determined using receipts, photographs, ownership documentation, and records in Samsung's and other databases.

## STATUTES OF LIMITATION, FRAUDULENT CONCEALMENT, AND ESTOPPEL

### A.    Discovery Rule

234.    The causes of action alleged herein accrued upon discovery of the defective nature of the Washing Machines.  Because the Defect is latent, and Samsung concealed it, Plaintiffs and members of the class did not discover and could not have discovered the Defect through reasonable and diligent investigation.  Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on Samsung's concealment of the Defects.

### B.    Fraudulent Concealment

235.    Any applicable statutes of limitation have been tolled by Samsung's knowing, active, and ongoing concealment and denial of the facts as alleged herein.  Samsung was and is under a continuous duty to disclose to Plaintiffs and the classes the true character, quality and nature of the Washing Machines, particularly that they pose serious risks to public safety, and are at risk of failure.  At all relevant times, and continuing to this day, Samsung knowingly, affirmatively and actively misrepresented and concealed the true character, quality and nature of the Washing Machines and sold the Washing Machines into the stream of commerce as if they were safe for use.  Given Samsung's failure to disclose this non-public information about the defective nature of the Washing Machines and safety risks to the public, information over which Samsung had exclusive control—and because Plaintiffs and proposed class members could not reasonably have known that the Washing Machines were thereby defective—Plaintiffs and class members reasonably relied on Samsung's knowing, affirmative, and ongoing concealment.  Had Plaintiffs and proposed class members known that the Washing Machines pose a safety risk to the public, they would not have purchased the Washing Machines, and those that had already purchased such washers would have made these claims at an earlier time.

236.    Plaintiffs and the class have been kept ignorant by Samsung of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and the class could not reasonably have discovered the true, latently defective nature of the Washing Machines.

C.    **Estoppel**

237.    Samsung was and is under a continuing duty to disclose to the Plaintiffs and the class the true character, quality, and nature of the Washing Machines.  Samsung knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Washing Machines, and the concealment is ongoing.  Samsung knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them.  At the very least, Samsung has known that the Washing Machines may explode and injure consumers since no later than approximately October 24, 2013, when a woman in California was actually injured by a Samsung Washing Machine explosion, leading Samsung to inspect her Washing Machine on November 22, 2013.  Plaintiffs reasonably relied upon Samsung's knowing, affirmative, and/or active and ongoing concealment.  Based on the foregoing, Samsung is estopped from relying on any statute of limitations in defense of this action.

238.    Additionally, Samsung is estopped from raising any defense of laches due to its own conduct as alleged herein.

**FIRST CAUSE OF ACTION**
**DECLARATORY AND INJUNCTIVE RELIEF**
**Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses**

239.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

240.    There is an actual controversy between Samsung and proposed class members concerning the existence of the Defects in the Washing Machines.

-61-

241.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  Accordingly, Plaintiffs and proposed class members seek a declaration that the Washing Machines have common Defects in their design and/or manufacture and a declaration that these common Defects pose a serious safety risk to consumers and the public.

242.    Samsung designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Washing Machines which contain material and dangerous Defects as described herein.  Based upon information and belief, Samsung continues to design, manufacture, produce, test, inspect, market, distribute, and sell Washing Machines which contain material and potentially dangerous Defects as described herein.

243.    At all times relevant, Samsung knew, or should have known, of the Defects that exist at the point of sale of the Washing Machines and render its Washing Machines unsafe, and of the substantial safety risk its Washing Machines pose to consumers and the public.

244.    Samsung has taken no or insufficient corrective action concerning the Defects described herein, and has not issued sufficient warnings or notices concerning the Defects and the safety risks accompanying it, nor implemented a sufficient Washing Machine recall.  Thus, Plaintiffs and proposed class members face the risk of real injury in that, because the Defects remain in the Washing Machine, Plaintiffs and proposed class members could be injured by a Washing Machine explosion, and could be injured by purchasing replacement Washing Machines that contain the same Defects and cause the same type of injury complained of herein.

245.    Because of Samsung's concealment of the Defects, Plaintiffs and proposed class members paid for Washing Machines that pose a serious safety risk to consumers and the public

and cannot be used for their intended purpose of safely washing clothes, bedding, towels and other household items.

246.    Plaintiffs and the class have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Samsung Washing Machine Defects.

247.    Samsung should be required to take corrective action to prevent further injuries, including:

        a.    permitting consumers to rescind their purchases;

        b.    issuing a nationwide recall of the Washing Machines in order to immediately remove all defective and unreasonably dangerous products from the market, fully compensate proposed class members, and prevent further injuries to life and property;

        c.    until an adequate recall is implemented, issuing warnings and/or notices to consumers and the Class concerning the Defects, cautioning them not to use their Washing Machines, and/or instructing them on steps they can take that may prevent or lessen the likelihood of explosion;

        d.    immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective Washing Machines described herein;

        e.    immediately discontinuing the destruction of evidence relevant to this and other litigation related to the defective Samsung Washing Machines, and to make a full accounting of any evidence destroyed since Samsung was on notice of litigation related to exploding Washing Machines; and

        f.    informing all potential class members with whom Samsung interacts about the pendency of this litigation, and potential class members' rights in relation to it.

1328245.11

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses

248.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

249.    The Washing Machines owned by Plaintiffs and proposed class members were defectively designed and manufactured and pose serious and immediate safety risks to consumers and the public.

250.    The Defects exist at the point of sale of the Washing Machines.

251.    The Defects place consumers and the public at serious risk for their own safety when the Washing Machines are used in consumers' homes.

252.    At all times relevant hereto, Samsung was under a duty imposed by law requiring that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description.  This implied warranty of merchantability is part of the basis for the bargain between Samsung, on the one hand, and Plaintiffs and proposed class members, on the other.

253.    Notwithstanding the aforementioned duty, at the time of delivery, Samsung breached the implied warranty of merchantability in that the Washing Machines were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used (safely washing clothes in a residential setting), and failed to conform to the standard performance of like products used in the trade.

254.    Samsung knew or should have known that the Washing Machines pose a safety risk and are defective and knew or should have known that selling the Washing Machines to Plaintiffs and proposed class members constituted a breach of the implied warranty of merchantability.

1328245.11

255.    As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and proposed class members bought the Washing Machines without knowledge of the Defects or their serious safety risks.

256.    As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and proposed class members purchased unsafe products which could not be used for their intended purpose of safely washing clothes, bedding, towels and other household items in a residential setting.

257.    As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and proposed class members have suffered damages and did not receive the benefit of their bargain.

258.    Samsung was unjustly enriched by keeping the profits for its unsafe products for months and/or years before incurring any costs of repair, replacement, retrofit, or a recall.  Even after announcing a recall, Samsung was unjustly enriched by keeping the profits for its unsafe products while unjustly requiring Plaintiffs and proposed class members to bear costs of repair and replacement, including the risk of injury and/or harm.

259.    Warranty disclaimers are unconscionable where, as here, proposed class members have no meaningful choice in determining the terms of a warranty, there is a gross disparity of power between the proposed class members and the manufacturer, the terms of the warranty favor the manufacturer over the buyer, and the manufacturer had knowledge of the Defects.

260.    Furthermore, warranty disclaimers are unenforceable where the terms are inconspicuous and the consumer was not aware of their existence.

261.    The Uniform Commercial code provides that "negation or limitation is inoperative to the extent that such construction is unreasonable." E.g., Ind. Code § 26–1–2–

316(1).  Samsung never required consumers to acknowledge acceptance or receipt of the

purported limitation on warranties.  Accordingly, it is unreasonable to limit Plaintiffs' and the

proposed class members' warranties without adequate notice of the limitation.

262.     Samsung is estopped from claiming as a defense the limitation on implied

warranties as it exists in its warranty to consumers as the limitation, as described herein, is

unconscionable.

263.     The defectively designed Washing Machines purchased by Plaintiffs and all other

proposed class members are unfit for their intended and ordinary purposes because they are

prone to break and even explode when operated as instructed and intended by Samsung.

264.     As a direct and proximate result of Samsung's breach of the implied warranty of

merchantability, Plaintiffs and all the proposed class members have suffered loss.

**THIRD CAUSE OF ACTION**
**STRICT LIABILITY**
**Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses**

265.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

herein.

266.     Samsung is engaged in the business of designing, manufacturing, distributing,

advertising, marketing, promoting, and/or selling home appliances, and did design, manufacture,

distribute, advertise, market, promote and/or sell the Washing Machines at issue herein.

267.     Samsung's Washing Machines were expected to and did reach Plaintiffs and

proposed class members without substantial change in the condition in which they were

manufactured, sold, and distributed.

268.     The Washing Machines were in a defective and unreasonably dangerous condition

when they left Samsung's possession or control in that, under normal conditions, usage, and

applications, they could not withstand the use for which they were intended.

1328245.11

269.    Plaintiffs and proposed class members used the subject Washing Machines in a manner reasonably intended by Samsung.

270.    The Washing Machines were defective because they were not safe for ordinary and intended use; Samsung failed to provide Plaintiffs and proposed class members either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the Washing Machines; the Washing Machines contained material design, materials, and manufacturing defects and were not reasonably safe due to such defects; the design, methods of manufacture, and testing of the Washing Machines did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the Washing Machines were manufactured; and at the time the Washing Machines left Samsung's control, the foreseeable risks associated with the Washing Machines' design exceeded the benefits associated with that design.

271.    Plaintiffs and proposed class members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition.

272.    Samsung acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and selling Washing Machines known to them to be defective and unreasonably dangerous.  As alleged, Samsung knew or should have known that the Defects would cause their Washing Machines to fail, cause flooding, damage the Washing Machine and other property, and threaten the personal safety of consumers.  Samsung knew or was repeatedly informed of the serious Defects, yet failed to take any remedial action and instead continued to sell this defective product.  Given Samsung's conscious disregard for the safety of the public, Plaintiffs and proposed class members seek exemplary or punitive damages.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE
**Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses**

273.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

274.    Samsung owed a duty to Plaintiffs and proposed class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Washing Machines with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and proposed class members from foreseeable and unreasonable risk of harm.  Samsung breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Washing Machines.

275.    Samsung unreasonably failed to provide appropriate and adequate warnings and instructions about its defective Washing Machines, and this failure was a proximate cause of the harm for which damages are sought.  In addition, at the time the Washing Machines left its control, Samsung knew, or in the exercise of reasonable care should have known, its defective Washing Machines posed a substantial risk of harm to the life and property of its customers. Samsung knew, or in the exercise of reasonable care should have known, the Washing Machines it designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, created an unreasonable safety risk and would fail to perform as intended.

276.    Samsung acted unreasonably in designing the Washing Machines, and this conduct was a proximate cause of the harm for which damages are sought.  Further, at the time the Washing Machines left the control of Samsung, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Washing

Machines. Furthermore, at the time the Washing Machines left the control of Samsung, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a Washing Machine of this design.

277. Samsung knew, or in the exercise of reasonable care should have known, that the Washing Machines created unreasonable safety risks. Samsung further knew, or in the exercise of reasonable care should have known, that the Washing Machines could cause property damage, personal injury, and/or death.

278. Based on this knowledge, Samsung had a duty to disclose to the Plaintiffs and proposed class members the serious safety risks posed by the Washing Machines and a duty to disclose the defective nature of the Washing Machines.

279. Samsung had a further duty not to put the defective Washing Machines on the market and has a continuing duty to replace its unsafe Washing Machines, remove its unsafe Washing Machines from the market and seek a sufficient recall that adequately and fully protects and compensates consumers.

280. Samsung failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Washing Machines by, among other things, failing to design and manufacture the Washing Machines in a manner to ensure that, under normal intended usage, they would not pose unreasonable risk to life and property.

281. Samsung failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, Plaintiffs and proposed class members of the Defects in the Washing Machines.

282.    Samsung failed to exercise reasonable care when it knew of the safety risks the Washing Machines posed and actively concealed those risks from Plaintiffs and proposed class members.

283.    Samsung failed to exercise reasonable care when it knew of the safety risks the Washing Machines posed and failed to timely or sufficiently replace, repair or recall Washing Machines it knew were unsafe and defective.

284.    As a direct and proximate result of Samsung's negligence, Plaintiffs and proposed class members bought the Washing Machines without knowledge of their defective nature or of their serious safety risks.

285.    As a direct and proximate result of Samsung's negligence, Plaintiffs and proposed class members purchased unsafe products which could not be used for their intended use.

286.    As a direct and proximate result of Samsung's negligence, Plaintiffs and proposed class members have suffered damages.

287.    Plaintiff and proposed class members seek to recover the damage caused by Samsung.  In addition, given Samsung's conscious disregard for the safety of Plaintiffs and proposed class members, they also seek an award of exemplary damages.

## FIFTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses**

288.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

289.    Samsung is and was at all times relevant a merchant with respect to washing machines.

290.    As fully pled above, Samsung had knowledge of the Defects alleged herein and that they pose serious safety risks to consumers like Plaintiffs and proposed class members.

291.    Despite that knowledge, at all times relevant, Samsung expressly warranted in writing that its Washing Machines were "warranted by SAMSUNG against manufacturing defects in materials and workmanship. . . ."

292.    In its warranty to customers, Samsung also warrants in writing that it provides the following warranties:  one year parts and labor; two years control board parts; three years stainless steel tub part; and ten years washing motor part.

293.    The motor part as alleged herein is defective in that it is too powerful for the Washing Machines, and the materials selected for other parts within the machines—including but not limited to the assembly dampers—are not strong enough to withstand the extreme forces generated by the washing motor part.

294.    The assembly dampers as alleged herein are defective in that they fail to prevent the tub from becoming disconnected during the spin cycle, leading to explosion.

295.    The unbalanced load warning as alleged herein is defective in that it fails to stop the Washing Machine spin cycle before the Washing Machines explode.

296.    Alternatively, the limitations in Samsung's warranty are unconscionable as described herein.

297.    By selling Washing Machines containing the Defects to consumers like Plaintiffs and proposed class members after it gained knowledge of the Defects, Samsung breached its express warranty to provide Washing Machines that were free from defects.

298.    Samsung also breached its express warranty to repair and correct material defects or component malfunctions in its Washing Machines when it failed to do so despite knowledge of the Defects and despite knowledge of alternative designs, alternative materials, and options for retrofits.

299.    Samsung has not made repairs correcting such material defects or component malfunctions in its Washing Machines.

300.    The limited warranty of repair for the Washing Machines fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and proposed class members whole and because Samsung has refused to provide the promised remedies within a reasonable time.

301.    Also, as alleged in more detail herein, at the time Samsung warranted and sold the Washing Machines, it knew that the Washing Machines did not conform to the warranties and were inherently defective, and Samsung wrongfully and fraudulently misrepresented and concealed material facts regarding its Washing Machines.

302.    Accordingly, Plaintiffs and proposed class members are not limited to the limited warranty of "repair" and Plaintiffs and proposed class members seek all remedies allowed by law.

303.    As more fully detailed above, Samsung knew that Plaintiffs' Washing Machines malfunctioned but failed to provide defect-free Washing Machines to Plaintiffs or proposed class members free of charge when their washing machines failed or to provide an adequate retrofit to remedy the Washing Machines.

304.    As more fully detailed above, Samsung was provided with notice and has been on notice of the Defects and of its breach of express written warranties through its own internal and external testing as well as hundreds or thousands of consumer warranty claims reporting malfunctions in the Washing Machines, and customer complaints, yet it failed to repair, replace, or retrofit the Washing Machines to ensure they were free of material defects or component malfunctions as Samsung promised.

305.    As a direct and proximate result of Samsung's breach of its express warranty, Plaintiffs and proposed class members have suffered damages.

306.    Samsung has been unjustly enriched by keeping the profits from the sale of its unsafe Washing Machines while never having to incur the cost of adequate repair.

## SIXTH CAUSE OF ACTION
### VIOLATIONS OF MAGNUSON-MOSS ACT
### (15 U.S.C. §§ 2301–2312)–WRITTEN WARRANTY
### Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses

307.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

308.    Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

309.    Plaintiffs and proposed class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

310.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

311.    Samsung provided Plaintiffs and proposed class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

312.    In its capacity as warrantor, and by the conduct described herein, any attempts by Samsung to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

313.    All jurisdictional prerequisites have been satisfied.

314.    By Samsung's conduct as described herein, including Samsung's knowledge of the defective Washing Machines and their action, and inaction, in the face of that knowledge,

Samsung has failed to comply with its obligations under its written and implied promises, warranties, and representations.

315.   As a result of Samsung's breach of express warranties, Plaintiffs and proposed class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## SEVENTH CAUSE OF ACTION
### VIOLATIONS OF MAGNUSON-MOSS ACT
### (15 U.S.C. §§ 2301–2312)—IMPLIED WARRANTY
**Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses**

316.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

317.   Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

318.   Plaintiffs and proposed class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

319.   Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

320.   Samsung provided Plaintiffs and proposed class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

321.   In its capacity as warrantor and by the conduct described herein, any attempt by Samsung to limit the implied warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is void.

322.   All jurisdictional prerequisites have been satisfied herein.

1328245.11

323.    By Samsung's conduct as described herein, including Samsung's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Samsung has failed to comply with its obligations under their written and implied promises, warranties, and representations.

324.    As a result of Samsung's breach of implied warranties, Plaintiffs and proposed class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**EIGHTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**Asserted on Behalf of the Nationwide Class and on Behalf of the State Subclasses**

325.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

326.    Samsung received proceeds from its intentional sale of defective top loading Washing Machines, which were purchased by Plaintiffs and proposed class members from Samsung's agents and authorized retailers for an amount far greater than the reasonable value of the defective machines.

327.    In exchange for the purchase price paid by Plaintiffs and proposed class members, Samsung provided defective Washing Machines that are likely to fail within their useful lives and pose a material risk of exploding.  There is no reasonable or acceptable rate for washing machines to explode.  These Defects render the Washing Machines unfit, and indeed, unsafe for their intended use.

328.    Plaintiffs and proposed class members reasonably believed that the Washing Machines would function as advertised and warranted, and did not know, nor could have known, that the Washing Machines contained Defects at the time of purchase.

329.     Samsung knows of and appreciates the benefit conferred by Plaintiffs and proposed class members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

330.     Under the circumstances, permitting Samsung to retain the proceeds and profits from the sales of the defective Washing Machines described herein would be unjust.  Therefore Samsung should be required to disgorge the unjust enrichment.

### NINTH CAUSE OF ACTION
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT. ANN. § 56:8-1, ET SEQ.
### Asserted on Behalf of the Nationwide Class and the New Jersey Subclass

331.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

332.     The New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1 *et seq.*) ("NJCFA") states, in relevant part:

> [A]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . ."  N.J. Stat. Ann. § 56:8-2.

333.     Plaintiffs and proposed class members are consumers who purchased Washing Machines for personal, family, or household use.

334.     The advertisement, promotion, distribution, supply, or sale of the Washing Machines is a "sale or advertisement" of "merchandise" governed by the NJCFA.

335.     Prior to Plaintiffs' and proposed class members' purchase of the Washing Machines, Samsung violated the NJCFA by making:

      a.    uniform representations that its Washing Machines were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, as set forth above; and

      b.    false and/or misleading statements about the capacity and characteristics of the Washing Machines, as set forth above, that were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to Plaintiffs and proposed class members.

336.    Samsung, in its communications with and disclosures to Plaintiffs and proposed class members, intentionally concealed or otherwise failed to disclose that the Washing Machines included design Defects that pose a safety risk to consumers and render the Washing Machines substantially certain to fail before the end of their useful lives.

337.    Plaintiffs and proposed class members reasonably expected that the Washing Machines would wash and spin dry in a superior fashion their clothes, bedding, towels and other household items without posing a risk of explosion, both prior to and at the time of purchase, and reasonably expected that Samsung did not design them to incorporate material Defects known to Samsung, and that the Washing Machines would perform as represented by Samsung in its promotional materials, service manuals, and owner's manual. These representations and affirmations of fact made by Samsung, and the facts it concealed or failed to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely upon in deciding whether or not to purchase a Washing Machine. Moreover, Samsung intended for consumers, including Plaintiffs and proposed class members, to rely on these material facts.

338.    Samsung had exclusive knowledge that the Washing Machines had and have the Defects set forth above which gave rise to a duty to disclose these facts. Samsung breached that duty by failing to disclose these material facts.

1328245.11

339.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances.  There is a strong public interest in consumer appliance safety, as well as truthfully advertising and disclosing consumer appliance defects that pose a risk to property and life.

340.    Had Plaintiffs and proposed class members known about the design Defects and accompanying safety risks, and/or that the Washing Machines did not operate as advertised, they would not have purchased the Washing Machines or would have paid less than they did for them. As a direct and proximate result of Samsung's actions, Plaintiffs and proposed class members have suffered ascertainable loss and other damages.

341.    New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide proposed class members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

342.    New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.  Samsung's headquarters and principal place of business are located in Ridgefield Park, New Jersey.  Samsung also owns property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating Samsung's conduct under New Jersey's laws.  Samsung's decision to reside in New Jersey and avail itself of New Jersey's laws render the application of New Jersey law to the claims at hand constitutionally permissible.

343.    The application of New Jersey's laws to the proposed Nationwide class members is also appropriate under New Jersey's choice of law rules because New Jersey has significant

contacts to the claims of the Plaintiffs and the proposed Nationwide class members, and New Jersey has a greater interest in applying its laws here than any other interested State.

344.    Even if New Jersey law is not to be applied nationwide, a New Jersey plaintiff may represent plaintiffs from all states whose consumer protection statutes do not conflict with the NJCFA, including Minnesota, Colorado, Connecticut, Delaware, Florida, Illinois, Massachusetts, Minnesota, New York, and Washington.

### TENTH CAUSE OF ACTION
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. ANN. § 501.201, ET SEQ.
#### Asserted on Behalf of the Florida Subclass

345.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

346.    Plaintiffs and proposed class members are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. § 501.203(7), and Samsung is engaged in "trade or commerce" within the meaning of Fla. Stat. Ann. § 501.203(8).

347.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. Ann. § 501.204(1).  Samsung participated in unfair and deceptive trade practices that caused Plaintiffs to suffer actual damages and violated the FDUTPA as described herein.

348.    In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the defective Washing Machines as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

349.    In particular, Samsung misrepresented the quality, characteristics, and capacities of the Washing Machines to Plaintiffs and proposed class members while intentionally

concealing or otherwise failing to disclose that the Washing Machines included Defects that pose a serious safety risk—namely, that the Washing Machines are prone to exploding during certain spin cycles.

350.    Plaintiffs and proposed class members reasonably expected that the Washing Machines would perform their advertised functions, including washing clothes, bedding, towels, and other potentially bulky items in a safe and effective manner.

351.    Instead, as a direct and foreseeable result of Samsung's unfair and deceptive practices, Plaintiffs and proposed class members paid for Washing Machines that posed a serious safety risk to consumers and the public and could not be used for their intended purpose of safely washing clothes, bedding, towels, and other household items.

352.    Plaintiffs and proposed class members suffered ascertainable loss caused by Samsung's misrepresentations and failure to disclose material information.  Had Plaintiffs proposed class members been aware of the Defects in the Washing Machines—including that the Washing Machines were prone to explosion and incapable of safely and effectively cleaning bulky items—they either would have paid less for the Washing Machines or would not have purchased them at all.

353.    A Florida plaintiff may represent plaintiffs from all states whose consumer protection statutes do not conflict with the FDUTPA, including Minnesota, Colorado, Connecticut, Delaware, Illinois, Massachusetts, Minnesota, New Jersey, New York, and Washington.

## ELEVENTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
### § 17200 ET SEQ. ("UCL")
### Asserted on Behalf of the California Subclass

226. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

227. California Business & Professions Code § 17200 *et seq.* prohibits unfair competition including any unlawful, unfair or fraudulent business practice.

228. Defendants violated the "unlawful" prong of the UCL by misrepresenting, actively concealing, and failing to disclose material information regarding the defective Washing Machines in violation of the California Consumer Legal Remedies Act, by breaching implied warranties in violation of the Magnuson-Moss Act and common law, by defectively designing, manufacturing, testing, inspecting, and distributing the Washing Machines in violation of common law, and by failing to provide Plaintiffs and proposed class members with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the Washing Machines and failing to take remedial action and instead continuing to sell the defective Washing Machines in violation of common law.

229. Defendants' misrepresentations, active concealment, and failures to disclose material information regarding the defective Washing Machines also violated the "unfair" prong of the UCL because it was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and proposed class members. Defendants have known or should have known since at least 2013 that the Washing Machines are defective and/or dangerous, and yet Defendants continued to manufacture, distribute, market, and sell the Washing Machines without adequately warning Plaintiffs and proposed class members of the safety risks inherent in ordinary use of the Washing Machines. Defendants' practice was also

contrary to legislatively declared and public policy, and the harm it caused to consumers outweighed its utility, if any. For example, Defendants' practice, as alleged herein, violates California's public policy of protecting consumers against unfair and deceptive business practices as reflected in California Civil Code § 1750 *et seq.* and California's public policy of protecting consumers from defective and dangerous products as reflected in California's adoption of the strict liability doctrine with respect to manufacturers of defective products.

230.    Defendants violated the "fraudulent" prong of the UCL by making material misrepresentations—including that the Washing Machines had "the power to handle anything!" and that "[e]ven bulky garments and blankets get super clean"—and by failing to disclose and actively concealing material information regarding the Defects that make the Washing Machines prone to catastrophic failure. These material misrepresentations and nondisclosures were likely to mislead consumers.

231.    Defendants' misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

232.    Defendants' misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

233.    Plaintiffs and proposed class members reasonably relied on Defendants' material misrepresentations and nondisclosures and would not have purchased, or would have paid less money for, Defendants' Washing Machines had they known the truth.

234.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct, Plaintiffs and proposed class members lost money or property.

235.    Defendants' conduct caused substantial injury to Plaintiffs and proposed class members.  Accordingly, Plaintiffs seek an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money that Plaintiffs and proposed class members paid for Defendants' Washing Machines and/or restitutionary disgorgement of profits.  Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## TWELFTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT CAL. CIV. CODE § 1750 ET SEQ. ("CLRA") Asserted on Behalf of the California Subclass

236.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

237.    Defendants are "persons" within the meaning of Cal. Civ. Code § 1761(c).

238.    Plaintiffs and proposed class members are "consumers," as defined by Cal. Civ. Code § 1761(d).

239.    The Washing Machines that Defendants and their agents marketed and sold constitute "goods" and "services," as defined by Cal. Civ. Code § 1761(a) and (b).

240.    The purchases of Defendants' Washing Machines by Plaintiffs and proposed class members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

241.    Plaintiffs and proposed class members purchased Defendants' Washing Machines for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

242.    Venue is proper under Cal. Civ. Code § 1780(d) because Defendants' principal place of business is in New Jersey and Defendants do business in New Jersey.  The declarations of Plaintiffs Colin Welsh and Rhoda Tortorici establishing that the District of New Jersey is the proper venue for this action are attached as Exhibit 1.

1328245.11

243.    Defendants deceived consumers in that they misrepresented the characteristics, quality, and safety of the Washing Machines and failed to disclose or actively concealed the Defects that pose a risk to consumer and public safety and lessen the value of the Washing Machines.

244.    Defendants' misrepresentation, active concealment, and failures to disclose violated the CLRA in the following manner:

a.    Defendants misrepresented that their Washing Machines had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.    Defendants misrepresented that their Washing Machines were of a particular standard, quality, and/or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c.    Defendants advertised their Washing Machines with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d.    Defendants misrepresented that their Washing Machines were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16));

e.    Defendants inserted unconscionable provisions in their consumer agreements, including purported warranty limitations and disclaimers, in violation of Cal. Civ. Code § 1770(a)(19).

245.    Defendants' misrepresentations regarding the Washing Machines were material to Plaintiffs and proposed class members because a reasonable person would have considered them important in making purchase decisions and because Defendants had a duty to disclose the truth.

1328245.11

246.    Plaintiffs and proposed class members reasonably relied upon Defendants' material misrepresentations and nondisclosures and would not have purchased, or would have paid less money for, Defendants' Washing Machines had they known the truth.

247.    As a direct and proximate result of Defendants' material misrepresentations and nondisclosures, Plaintiffs and proposed class members have been irreparably harmed.

248.    Plaintiffs seek injunctive relief in the form of an order enjoining Defendants from making such material misrepresentations and failing to disclose or actively concealing the defects and dangers associated with the Washing Machines.  Plaintiffs also seek attorneys' fees and costs.

249.    In accordance with California Civil Code § 1782(a), on November 29, 2016, Plaintiffs' counsel served Samsung with notice of its CLRA violations by certified mail, return receipt requested.  A true and correct copy of that notice is attached hereto as Exhibit 2.  The CLRA demand letter was delivered to Defendants' counsel on December 5, 2016, as evidenced by Exhibit 3.

250.    Defendants have refused or failed to timely respond to Plaintiffs' CLRA demand notice.

251.    Defendants have failed to provide appropriate relief for their CLRA violations within 30 days of receipt of Plaintiffs' demand notice.  Accordingly, pursuant to Cal. Civ. Code §§ 1780 and 1782(b), Plaintiffs are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## THIRTEENTH CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION, UNFAIR COMPETITION, COMMERCIAL, AND COMMON LAWS
#### Asserted on Behalf of the State Subclasses

252.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

253.    Samsung's actions alleged above, and the resulting harm to Plaintiffs and proposed class members arising therefrom, violate not only the NJCFA, the FDUTP, the UCL, and the CLRA, but also the common law duties of good faith and fair dealing, the common law of fraud by omission, and the commercial, consumer protection, and unfair competition laws of various states, including, *inter alia*, the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521 et seq.), Colorado's Consumer Protection Act (Colo. Rev. Stat. Ann. § 6-1-101 et seq.), the Illinois Consumer Fraud and Deceptive Practices Act (815 Ill. Comp. Stat. 505/2), the Indiana Consumer Fraud and Deceptive Practices Act (Ind. Code § 24-5-0.5 et seq.), the Kentucky Consumer Fraud and Deceptive Business Practices Act (Ky. Rev. Stat. § 367.220 et seq.), Louisiana's redhibition law (La. Civ. Code Ann. art. 2520, et seq.), the Maryland Consumer Protection Act (Md. Code Ann., Com. Law § 13-301 et seq.),the consumer protection law of Massachusetts (Mass. Gen. Laws Ann. ch. 93, § 1 et seq.), the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.903 et seq.), the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68 et seq.), the New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-a:1 et seq.), New York's consumer protection statute (N.Y. Gen. Bus. Law § 349, et seq.), the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. Ann. § 75-1.1), Ohio's Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01 et seq.), Oklahoma's Consumer Protection Act (Okla. Stat. Ann. tit. 15, § 751 et seq.), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. and Cons. Stat. Ann. § 201-1

1328245.11

et seq.), the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code

Ann. § 17.41 et seq.), the Washington Consumer Protection Act (Wash. Rev. Code Ann.

§ 19.86.010 et seq.), and the Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18

et seq.).

254.    By this Count Plaintiffs plead on behalf of the Class violations of all the foregoing

statutory and common laws.

### FOURTEENTH CAUSE OF ACTION
#### PUNITIVE DAMAGES
#### Asserted on Behalf of the Nationwide Class and the State Subclasses

255.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

herein.

256.    At the same time Samsung refuses to make its customers whole, and after denying

the safety risk for years, Samsung stockpiles cash.  It currently holds cash and cash equivalents

of $70 billion—an eye-popping figure that has *quadrupled* over the past five years.  One

Bloomberg columnist characterized Samsung as "drowning in liquidity . . . Samsung's current

assets are enough to pay off all its debts, twice over."  Tim Culpan, "Samsung, You Don't Need

$60 Billion," Bloomberg, Nov. 28, 2016, https://www.bloomberg.com/gadfly/articles/2016-11-

28/samsung-stop-waiting-for-a-rainy-day.  "What the heck does Samsung Electronics Co. need

with all that cash!" the columnist asked rhetorically, noting that "Exploding phones and self-

destructing washing machines are about as close as the company will ever get to the urgent need

for a large wad of Ben Franklins, and even those disasters won't set them back that much."  *Id.*

257.    Samsung's conduct was wantonly reckless, malicious, systematic, repetitious,

knowing, and intentional, and demonstrated a lack of care and reckless disregard for the rights

and interests of Plaintiffs and the public.  Samsung's conduct thus warrants an assessment of

1328245.11

punitive damages, consistent with the actual harm it has caused, the reprehensibility of its wanton and willful conduct, and the need to punish and deter such conduct.

## JURY DEMAND

258.    Plaintiffs and the proposed class hereby demand a trial by jury on all counts so triable.

\* \* \*

WHEREFORE, Plaintiffs Suzann Moore, Michelle Soto Fielder Melissa Thaxton, Jo Ann Ober, Steven Post, Colin Welsh, Todd Wathen, Harvey Ross, Rhoda Tortorici, William Losey, Theresa Dzurenda, Andres Linsey-Bell, Thomas DeLuca, Sylvia DeLuca, and Daniel Robinson individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.    An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    An Order appointing Plaintiffs Suzann Moore, Michelle Soto Fielder Melissa Thaxton, Jo Ann Ober, Steven Post, Colin Welsh, Todd Wathen, Harvey Ross, Rhoda Tortorici, William Losey, Theresa Dzurenda, Andres Linsey-Bell, Thomas DeLuca, Sylvia DeLuca, and Daniel Robinson as representatives for the Class and appointing their counsel as lead counsel for the Class;

C.    An order awarding Plaintiffs Suzann Moore, Michelle Soto Fielder Melissa Thaxton, Jo Ann Ober, Steven Post, Colin Welsh, Todd Wathen, Harvey Ross, Rhoda Tortorici, William Losey, Theresa Dzurenda, Andres Linsey-Bell, Thomas DeLuca, Sylvia DeLuca, and Daniel Robinson and all other proposed class members damages in an amount to be determined at trial for the wrongful acts of Samsung described herein;

1328245.11

D.      A Declaration that the Washing Machines are defective and pose a serious safety risk to consumers and the public;

E.      An Order enjoining Samsung, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Washing Machines; requiring Samsung to issue corrective actions including notification, adequate recall, service bulletins, and fully-covered replacement parts and labor, and/or replacement of the Washing Machines; and requiring Samsung to preserve all evidence relevant to this lawsuit and notify Washing Machine owners with whom it comes in contact of the pendency of this and related litigation;

F.      Restitution as authorized by law;

G.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

H.      An order awarding attorneys' fees pursuant to applicable Federal and State law;

I.      Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

J.      Any and all other and further relief as this Court deems just, equitable, or proper.


Dated: March 3, 2017                    Respectfully submitted,

                                        */s/ Jason L. Lichtman*
                                        Jason L. Lichtman (NJ Bar Number 8092011)
                                        Lieff Cabraser Heimann & Bernstein, LLP
                                        250 Hudson Street, 8th fl.
                                        New York, NY 10013-1413
                                        Phone: (212) 355-9500
                                        Email: jlichtman@lchb.com

1328245.11

John T. Spragens (admitted *pro hac vice*)
Email:  jspragens@lchb.com
Laura B. Heiman (admitted *pro hac vice*)
Email:  lheiman@lchb.com
Lieff Cabraser Heimann & Bernstein, LLP
One Nashville Place
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2423
Phone:  (615) 313-9000


Scott L. Starr (admitted *pro hac vice*)
Email:  starr@starrausten.com
Andrew B. Miller (admitted *pro hac vice*)
Email:  miller@starrausten.com
Starr Austen & Miller, LLP
201 S. Third Street
Logansport, IN 46947
Phone:  (574) 722-6676


James E. Cecchi (NJ Bar Number 030861989)
Carella Byrne Cecchi Olstein Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
Phone:  (973) 994-1700
Email:  JCecchi@carellabyrne.com

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2017 service of this document was accomplished by

filing this Complaint using the Court's ECF system, which will automatically send a true and

correct copy to the following:

>Michael R. McDonald
>One Gateway Center
>Newark, New Jersey 07102
>Tel. 973-596-4827
>Fax 973-639-6295
>mmcdonald@gibbonslaw.com
>
>**SQUIRE PATTON BOGGS (US) LLP**
>Sean P. Neafsey
>One Riverfront Plaza
>1037 Raymond Blvd., Suite 600
>Newark, New Jersey 07102
>Tel. 973-848-5600
>Fax 973-848-5601
>sean.neafsey@squirepb.com
>
>Philip M. Oliss (*admitted pro hac vice*)
>Bruce Khula (*admitted pro hac vice*)
>Kristin L. Bryan (*admitted pro hac vice*)
>4900 Key Tower
>127 Public Square
>Cleveland, Ohio 44114
>Tel. 216-479-8500
>Fax 216-479-8780
>philip.oliss@squirepb.com
>bruce.khula@squirepb.com
>kristin.bryan@squirepb.com

>*/s/ Jason L. Lichtman*
>Jason L. Lichtman